**Ronald G. COHEN, Plaintiff,**

v.

**BANKERS TRUST COMPANY, BT Bradford Stock Services, Inc., Defendants.**

**No. 75 Civ. 1654 (WCC).**

United States District Court,
S. D. New York.

Jan. 26, 1978.

Sherman & Citron, New York City, for plaintiff; Mortimer J. Metchick, New York City, of counsel.

Gusrae, Greene & Kaplan, New York City, for defendants.

**MEMORANDUM AND ORDER**

CONNER, District Judge:

This is a diversity action alleging negligence and breach of fiduciary duty on the part of Bankers Trust Company ("Bankers") and Bradford Stock Services, Inc., operator of Bankers' stock transfer department. Plaintiff alleges that defendants erroneously reissued his stock in a Rule 144 transaction in the street name of his broker, Weis Securities, Inc. ("Weis"). As a result, the stock was commingled with other of Weis' securities held in street name and a portion of it lost to plaintiff when Weis went into bankruptcy. Plaintiff seeks to hold defendants responsible for damages suffered in the amount of $16,804.23.

The parties have submitted an agreed statement of facts and documentation of the transactions involved, establishing essentially as follows:

In March 1973, plaintiff owned 6,571 shares of unregistered common stock of Automatic Data Processing, Inc. ("ADP"), held in the form of two certificates: number MN2254, for 3,721 shares, and number U37131, for 2,850 shares. Each certificate bore a legend stating that "[t]he shares represented by this certificate have not been registered under the Securities Act of 1933. The shares have been acquired for investment and may not be sold, transferred, pledged or hypothecated in the absence of an effective registration statement for the shares under the Securities Act of 1933, or an opinion of counsel to the company that registration is not required under said act."

. Plaintiff approached his broker in February 1973 to arrange for the sale of the restricted shares pursuant to Securities and Exchange Commission Rule 144. Plaintiff signed a "Form 144" and an "Assignment Separate from Certificate." A guarantee of plaintiff's signature appeared on the assignment. At the time plaintiff signed the

assignment, the space for the name of the assignee had not been filled in. The broker later imprinted its own name—"Weis Securities, Inc."—without plaintiff's knowledge. The Form 144 listed as "Number of Shares or Other Units To Be Sold," 6,571 shares of ADP common stock.

The Form 144, the assignment separate from certificate (with Weis as assignee) and plaintiff's two certificates for the ADP stock were then mailed by the broker to Bankers on April 16, 1973 under a cover letter which read as follows:

"Enclosed herewith please find the following restricted certificates of Automatic Data Processing, Inc. in the name of the above customer:

Certificate Number
NM 2254 for 3,721 shares –5/1/73
U 37131 for 2,850 shares –5/1/73

"These shares are being sold by Mr. Cohen under S.E.C. Rule 144, and we enclose herewith a copy of Form 144, which has been filed with the S.E.C. today.

"We would appreciate your issuing new unlegended certificates in the name of the stockholder in the following denominations; 10 × 500, 15 × 100, and 1 × 71.

"Any balance of shares which remain unsold will be returned to you to be reissued bearing the legend set forth on the original certificates."

Bankers had previously received authorization for the transfer from ADP counsel, on the condition of compliance with requirements of Rule 144 as outlined in the letter of instruction from counsel.[1] On May 1, 1973, it cancelled plaintiff's original certificates for the stock and reissued, in the name of Weis, a single unlegended certificate for 6,571 shares.

Two thousand of these were sold for plaintiff's account, and the remainder held in the street name of Weis. In late May 1973, a petition was filed for Weis' liquidation in bankruptcy. Plaintiff eventually received 3,227 of his shares from the trustee but failed to recover the remaining 1,344, which had an estimated market value of $88,714. Payments from the liquidator and trustee reduced plaintiff's loss to $16,804.23, the amount claimed as damages.

Plaintiff contends that rather than having transferred the ADP shares to the street name of the broker, defendants should have reissued the shares in plaintiff's own name as per instructions in the cover letter; alternatively, at the very least, defendants should have made diligent inquiry of the broker as to the proper course to follow in view of the inconsistency of the cover letter with the assignment separate from certificate. Plaintiff further alleges that, in a Rule 144 transaction, legended stock must be reissued in the name of the stockholder rather than that of the broker, since any balance of unsold shares will be required to be returned as legended

---

1. The letter reads as follows:

"In connection with the proposed sale by Ronald G. Cohen (the "Stockholder") of shares of the Company's Common Stock (the "Stock") in reliance upon Rule 144 under the Securities Act of 1933, as amended, you are hereby authorized upon satisfaction of the following conditions to transfer 6,571 shares of such Stock registered in the name of the Stockholder, notwithstanding any legend appearing on the certificate(s) representing such shares:

"(1) The Stockholder or the broker effecting such sale (the "Broker") shall have presented the certificates for transfer accompanied by a copy of Form 144 signed by the Stockholder in form in which it was filed with the Securities and Exchange Commission;

"(2) The amount of shares to be transferred, together with all shares which have been reported in the Form 144 furnished to you as sold during the six months prior to the date thereof is less than 61,019 shares (representing 1% of the outstanding shares; of the Stock as of December 31, 1972, the date of the most recent public report or statement of such amount) and also is less than the average weekly reported volume of trading in shares of the Stock on all securities exchanges on which such shares are admitted for trading during the four calendar weeks preceding the date on which the order to sell was placed by the Stockholder with the Broker as set forth in the Broker's letter furnished to you;

"(3) Certificates representing the balance of the shares, if any, are issued bearing the legend set forth on the original certificate(s);

"If the conditions set forth herein have been satisfied, the shares to be transferred may be sold by the Stockholder in reliance upon Rule 144."

stock in the owner's name, and that defendants, as transfer agents, should have been aware of that fact. In this connection, plaintiff asserts that the letters from Weis and ADP counsel made manifest to the transfer agent plaintiff's intention to sell only a portion of the 6,571 shares that were the subject of reissuance.

The parties agree that the duties and liabilities of a transfer agent are to be determined in accordance with the provisions of Article 8 of the Uniform Commercial Code, which has been adopted in both Delaware, the state of incorporation of the issuer, and New York, that of the transfer agent. The consistency of statutory policy of the two states with respect to the issues herein, and the absence of pertinent case law from either state, obviates any question of conflict of laws.

Under § 8–406(1)(b)[2] of the Uniform Commercial Code, a transfer agent stands in the shoes of the issuer with respect to the latter's obligation to the holder or owner of securities. An issuer "is not liable to the owner or any other person suffering loss as a result of the registration of a transfer of a security if

"(a) there were on or with the security the necessary indorsements (Section 8–308); and

"(b) the issuer had no duty to inquire into adverse claims or has discharged any such duty (Section 8–403)." Section 8–404(1)(a) and (b).

Section 8–404 is described in the "Official Comment" as stating "the basic exonerative policy of [the] Article" in insulating the issuer from liability for improper registration upon a showing of "one affirmative element: 'the necessary indorsements' * * * and one negative element: absence of a duty to inquire into adverse claims."

**2.** Section 8–406(1)(b) provides:

"(1) Where a person acts as authenticating trustee, transfer agent, registrar, or other agent for an issuer in the registration of transfers of its securities or in the issue of new securities or in the cancellation of surrendered securities * * * .

Section 8–308 provides:

"(1) An indorsement of a security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it * * * .

\* \* \* \* \* \*

"(3) 'An appropriate person' in subsection (1) means (a) the person specified by the security or by special indorsement to be entitled to the security * * * ."

In the present case, the securities in question had originally been issued in plaintiff's name (as evidenced by the ADP stock certificates that had been delivered to Bankers); accordingly, plaintiff's signature on the assignment separate from certificate was that of an "appropriate person" within the meaning of § 8–308 and constituted the "necessary indorsement" referred to in § 8–404(1)(a).

This much—that there was a valid instrument of assignment—plaintiff appears willing to concede. Plaintiff's argument, however, is that the cover letter which accompanied the assignment was notice of an "adverse claim" within § 8–404(1)(b). An "adverse claim" is defined in § 8–301(1):

" 'Adverse claim' includes a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of or has an interest in the security."

There are only two specifically defined circumstances in which an issuer to whom a security is presented for registration is under a duty to inquire into adverse claims, and only one of these is pertinent here—if "a written notification of an adverse claim is received at a time and in a manner which affords the issuer a reasonable opportunity to act on it prior to the issuance of a new, reissued or re-registered security and the notification identifies

\* \* \* \* \* \*

"(b) he has with regard to the particular functions he performs the same obligation to the holder or owner of the security and has the same rights and privileges as the issuer has in regard to those functions."

the claimant, the registered owner and the issue of which the security is a part and provides an address for communications directed to the claimant * * *." Section 8–403(1)(a).[3]

The statutory language would have to be strained considerably for the cover letter received by defendants in this case to be interpreted as an "adverse claim" or as "written notification" thereof. The letter was in the form of a request to issue shares in the name of the stockholder and not in the form of a "claim" that "a transfer was or would be wrongful or that a particular adverse person is the owner of or has an interest in the security." Indeed, the letter failed even to make reference to—much less to challenge—the instrument effecting the transfer, the assignment separate from certificate. The letter was not signed by the party asserted to be the adverse claimant (plaintiff) but rather by the proposed transferee (Weis).

Moreover, under the circumstances, plaintiff would hardly have been judged by the transfer agent to be in a position adverse to that of Weis. Notwithstanding the assignment of the securities, plaintiff remained the beneficial owner thereof, and the transfer was made to the street name of the broker simply to facilitate sale, a rather common practice. The transaction, therefore, posed no apparent threat to plaintiff's ownership interest in the securities.

The statements in the cover letter before defendants thus failed to establish plaintiff as an adverse claimant. And the letter itself was hardly the equivalent of the "stop transfer notice" that is ordinarily received in the industry where a proposed transfer of securities is claimed to be wrongful. "Official Comment" to § 8–403 at 300 (McKinney's 1964). As between the valid

instrument of assignment signed by plaintiff, transferring the securities to Weis, and the letter received from the broker, defendants exhibited no negligence, and simply adhered to their statutory obligations, in following the instructions set forth in the former document. See § 8–401(1).[4]

The fact that the securities were being freed for sale under Rule 144 did not alter the obligations of the transfer agent. In terms, the Rule does not set forth special procedures for the transfer of restricted securities; the sole caveat that the Commission staff has issued transfer agents in respect of their operation under the Rule is to remain cognizant of their responsibility to take appropriate steps to forestall any "illegal distribution" that might occur in connection with transactions pending before them. *DeFrees, Fiske, Voland, Albert & Hoffman,* [1971–72] CCH Fed.Sec.L.Rep. ¶ 78,745.

Neither the Rule itself, therefore, nor the Commission comments thereon, support the proposition that a transfer agent is limited in a Rule 144 transaction to reissuing shares in the name of the stockholder. Indeed, since the shares must be sold within 90 days after the filing of notice of sale with the Commission in Washington, the reissuance of the shares in the street name of the broker to expedite the process of sale is understandable, as defendants observe.

Plaintiff is correct that securities which remain unsold will have to be returned to the transfer agent for relegending and held in the owner's name as restricted stock. That fact, however, by no means renders improper or negligent the original reissuance of the shares in the broker's street name for the limited purpose of effecting sale. Any balance of unsold shares would

3. The second circumstance is where
"the issuer is charged with notice of an adverse claim from a controlling instrument which it has elected to require under subsection (4) of Section 8–402." Section 8–403(1)(b).

4. Section 8–401(1) provides in pertinent part:
"(1) Where a security in registered form is presented to the issuer with a request to

register transfer, the issuer is under a duty to register the transfer as requested if
"(a) the security is indorsed by the appropriate person or persons (Section 8–308); and
"(b) reasonable assurance is given that those indorsements are genuine and effective (Section 8–402); and
"(c) the issuer has no duty to inquire into adverse claims or has discharged any such duty (Section 8–403) * * *."

be returnable to the transfer agent for re-legending and reissuance in the name of the stockholder, as the Rule requires. Thus, whether or not, in the present case, defendants were on notice that there would be leftover shares, their procedure in effecting transfer entailed no inconsistency with the requirements of a Rule 144 transaction.

In sum, defendants violated none of their statutory duties to plaintiff and patently acted in good faith. They may therefore not be held liable for negligence or breach of fiduciary obligation. Were reissuance of securities in the street name of a broker possibly viewable as negligence in a Rule 144 context, there still would remain a serious question of proximate cause between such negligence and the injuries sustained by plaintiff, which would not have resulted but for the unforeseeable and abnormal intervening event of the bankruptcy of the brokerage house in whose name plaintiff's securities were being held. Summary judgment is granted in favor of defendants and the complaint is dismissed.

SO ORDERED.