**COWEN AND COMPANY, a partnership, Plaintiff and Respondent,**

v.

**ATLAS STOCK TRANSFER COMPANY, a Utah corporation, and Global Oil Company, a Utah corporation, Defendants and Appellants.**

No. 18739.

Supreme Court of Utah.

Dec. 27, 1984.

James N. Barber, Barber, Verhoes & Yocom, Salt Lake City, for defendants and appellants.

Randy L. Dryer, Byron W. Milstead, Parsons, Behle & Latimer, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendants appeal a summary judgment in favor of plaintiff. The district court granted the summary judgment on the issue of defendants' joint and several liability

to plaintiff for breach of Atlas Stock Transfer Company's (Atlas) duty to transfer shares of Global Oil Company's (Global) stock in a timely manner under U.C.A., 1953, § 70A–8–401. Defendants also appeal a judgment awarding damages to Cowen and Company (Cowen). We affirm.

Plaintiff Cowen is a partnership organized under the laws of New York State. Its business is buying and selling securities. Cowen is a member of all major stock exchanges and the National Association of Securities Dealers (NASD).

Defendant Global is a Utah corporation whose business is acquiring oil and gas leases. Defendant Atlas is a Utah corporation which, as transfer agent for Global, is responsible for performing stock transfer and registrar functions for Global.

Robert Staff is a resident of Florida and was the registered owner of 45,000 shares of Global common stock, the subject of this action.

On December 19, 1980, Cowen received stock certificate No. 000923, representing 45,000 shares of Global Oil stock, from Dis-Com Securities (Dis-Com), a brokerage house in Florida that clears through Cowen. The certificate was registered in the name of Robert Staff and had no restrictions on its face. Staff had requested that the stock be sold and had endorsed the certificate. Cowen verified and guaranteed Staff's signature through Dis-Com. During the period from December 15, 1980, to February 18, 1981, Cowen sold 24,000 of Staff's shares to various other brokers.

On January 12, 1981, Cowen sent certificate No. 000923 to Atlas requesting that Atlas, as transfer agent for Global, cancel the certificate and reissue the stock: 21,000 shares to be issued in the name of Staff and 24,000 shares to be issued in denominations representing the individual sales by Cowen.

On February 20, 1981, a Cowen employee contacted Atlas to inquire why Atlas had failed to transfer the shares and reissue new certificates as requested. The employee was informed that a stop transfer order had been placed against the certificate. On February 23, Andrew F. Grietz, Jr., vice president and director of compliance for Cowen, contacted Atlas concerning the delay. Grietz was informed that Atlas had received a telegram from a representative of a corporation known as 98161 Canada Limited (Canada Ltd.). Canada Ltd. claimed to be the true owner of the 45,000 shares of Global stock. Upon receipt of the telegram, Atlas put a stop order on the transfer request and advised Canada Ltd. by certified letter dated January 15, 1981, that under Utah law Canada Ltd. must post an indemnity bond or obtain an injunction or order prohibiting the transfer within 30 days or the transfer would be completed as requested. No further communication was thereafter received from Canada Ltd.

Grietz demanded on behalf of Cowen that Atlas effect the stock transfer. Although 30 days had passed since dispatch of the certified letter, Atlas refused to reissue the stock. On February 19, 1982, more than one year after the initial transfer request, Atlas registered the transfer of the stock. Nothing material had changed in the positions of any of the parties.

Industry practice and NASD rules and regulations required Cowen to make delivery of the stock to purchasers within five business days of each sale. Atlas' refusal to reissue the stock rendered Cowen unable to make timely delivery. Cowen attempted to purchase Global shares on the open market but was unable to purchase sufficient shares to cover its delivery obligations. Purchasing brokers therefore "bought in" Cowen, i.e., purchased Global shares on the open market to cover their obligations to their own customers. Under NASD regulations, purchasing brokers were not required to pay for stock until delivery. However, industry practice required Cowen to pay Staff within five days after any order even though Cowen had not received the money from the purchasing brokers. Following that practice, Cowen did pay Staff the sales proceeds within five days of each sale. Cowen issued 12 checks totaling $148,359.17 to Staff, which Staff endorsed and cashed. Cowen issued additional

checks to Staff totaling $46,470.48, on which it stopped payment upon learning of Atlas' refusal to transfer the shares. Those proceeds were credited to Staff's cash account with Cowen. Cowen also made $19,000 in additional sales for which checks were never drawn. The $19,000 was credited to Staff's cash account. Therefore, since buy-ins had been effected and Staff had been paid for sales of the stock, Cowen was left holding 24,000 shares of Global stock.

Between the time of the transfer request in January, 1981, and the time of the damages trial in July, 1982, the value of Global stock declined from approximately ten dollars to six and one-half cents per share.

In March, 1981, Cowen filed an action in district court against defendants, alleging that defendant Atlas had wrongfully refused to timely register the transfer of Global stock. In response to Cowen's motion, the district court granted partial summary judgment to Cowen on the issue of liability. In July, 1982, the issue of damages was resolved in a trial before the bench. The judge awarded damages to Cowen in the amount of $213,923.30, together with interest on $148,359.17 from the date of payment from Cowen to Staff.

■ Chapter 8 of the Utah Uniform Commercial Code, U.C.A., 1953, §§ 70A–8–101 to –406 (1980 ed.), establishes the standards for issuance and transfer of investment securities.[1] Since Global is a Utah corporation, its rights and duties with respect to transfer of the stock at issue in this case are governed by Chapter 8 of the Utah Uniform Commercial Code.[2]

An issuer of stock has a mandatory duty to register a requested transfer of a security if the preconditions set forth in U.C.A., 1953, § 70A–8–401(1)[3] are met.[4] Section 70A–8–401(2) expressly creates a right of action in the person presenting a security for registration of transfer for any losses occasioned by unreasonable delay or by failure or refusal to register the transfer. Section 70A–8–406(1) imposes a coextensive duty upon the transfer agent for an issuer.[5] Wrongful refusal by a transfer agent to register a requested transfer makes the agent liable to the damaged shareholder.[6]

Thus, if a party requesting transfer of a security can show that it has met the preconditions of section 70A–8–401(1) and that the issuer or transfer agent has unreasonably delayed or refused to register the transfer, that party has an action for damages against the issuer and/or the transfer agent.

Appellants do not dispute that the requirements of subsections (a), (b) and (d) of

**1.** The stock at issue in this case is a security as defined by U.C.A., 1953, § 70A–8–102(1)(a).

**2.** U.C.A., 1953, § 70A–8–106 states:
The validity of a security and the rights and duties of the issuer with respect to registration of transfer are governed by the law (including the conflict of laws rules) of the jurisdiction of the organization of the issuer.

**3.** Section 70A–8–401(1) states:
Where a security in registered form is presented to the issuer with a request to register transfer, the issuer is under a duty to register the transfer as requested if
(a) the security is indorsed by the appropriate person or persons (section 70A–8–308); and
(b) reasonable assurance is given that those indorsements are genuine and effective (section 70A–8–402); and
(c) the issuer has no duty to inquire into adverse claims or has discharged any such duty (section 70A–8–403); and

(d) any applicable law relating to the collection of taxes has been complied with; and
(e) the transfer is in fact rightful or is to a bona fide purchaser.

**4.** *See, e.g., Dempsey-Tegeler & Co. v. Otis Oil & Gas Corp.,* 293 F.Supp. 1383, 1385 (D.Colo.1968) (construing parallel provision of Colorado law, Colo.Rev.Stat. § 155–8–401(1) (1963)).

**5.** See the following cases construing Uniform Commercial Code article 8, section 406(1) as enacted in other states: *Kenler v. Canal Nat'l Bank,* 489 F.2d 482, 485 (1st Cir.1973); *Cohen v. Bankers Trust Co.,* 445 F.Supp. 794, 796 (S.D.N.Y.1978); *Welland Inv. Corp. v. First Nat'l Bank,* 81 N.J.Super. 180, 186–87, 195 A.2d 210, 214–15 (1963).

**6.** *Id.*

section 401(1) had been satisfied as of the date the stock transfer was requested. Stock certificate No. 000923 had been endorsed by its registered owner, Robert Staff; Staff's signature had been verified and guaranteed by Cowen through DisCom; and all applicable laws relating to the collection of taxes had been complied with.

Further, by February 15, 1981, Atlas had discharged any duty it had under subsection (c) of section 401(1) to inquire into the adverse claim of Canada Ltd. Atlas contends that it had a duty to inquire into the adverse claim of Canada Ltd. after receiving a telegram from Canada Ltd. wherein Canada Ltd. claimed to be the true owner of the Global shares represented by certificate No. 000923.[7] Atlas, however, discharged any duty of inquiry by the actions it took thereafter.

An issuer or transfer agent can discharge any duty of inquiry:

> [B]y any reasonable means, including notifying an adverse claimant by registered or certified mail at the address furnished by him or if there be no such address at his residence or regular place of business that the security has been presented for registration of transfer by a named person, and that the transfer will be registered unless within thirty days from the date of mailing the notification, either (a) an appropriate restraining order, injunction or other process issues from a court of competent jurisdiction; or (b) an indemnity bond sufficient in the issuer's judgment to protect the issuer and any transfer agent, registrar or other agent of the issuer involved, from any loss which it or they may suffer by complying with the adverse claim is filed with the issuer.[8]

Atlas sent a certified letter dated January 15, 1981, to Canada Ltd. advising Canada Ltd. that under Utah law it must post an indemnity bond or obtain an injunction or order prohibiting the transfer within thirty days or the transfer would be registered. Atlas received no communication of any kind thereafter from Canada Ltd. By failing to post a bond or to obtain an injunction within thirty days, or at all, Canada Ltd. waived any rights it might have possessed and could not have held Atlas liable for effecting the requested transfer.[9] Thus, by February 15, Atlas had discharged any duty of inquiry[10] and, if the requirements of the remaining subsection of section 401(1) had been met, Atlas was required to register the transfer. Atlas, however, contends that the requirements of section 401(1)(e) were not met in that Cowen was not a bona fide purchaser[11] of the subject shares.

Rule 56(c) of the Utah Rules of Civil Procedure provides that summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[12] In this case, Cowen's motion for summary judgment was supported by an affidavit of Andrew Grietz which recited facts sufficient to find that Cowen was a bona fide purchaser. Atlas and Global did not proffer affidavits in opposition to the motion, did not challenge the sufficiency of the Grietz affidavit, and did not raise the issue of Cowen's bona fide purchaser status to the trial court in any fashion or provide any evidence to dispute that status.

▪ Atlas suggests that because the instant action was resolved by summary judgment, Atlas can raise issues that were not raised to the trial court and proffer facts to support those issues on appeal. This contention ignores the clear language of Rule 56(e):

---

7. *See* U.C.A., 1953, § 70A–8–403(1)(a).

8. U.C.A., 1953, § 70A–8–403(2).

9. *See* U.C.A., 1953, § 70A–8–404(1)(b).

10. *See Kanton v. United States Plastics, Inc.,* 248 F.Supp. 353 (D.N.J.1965).

11. As defined by U.C.A., 1953, § 70A–8–302.

12. *Bangerter v. Poulton,* Utah, 663 P.2d 100 (1983).

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

As the Court said in *Franklin Financial v. New Empire Development Co.:*[13]

[W]hen a party opposes a properly supported motion for summary judgment and fails to file any responsive affidavits or other evidentiary materials allowed by Rule 56(e), the trial court may properly conclude that there are no genuine issues of fact unless the face of the movant's affidavit affirmatively discloses the existence of such an issue. Without such a showing, the Court need only decide whether, on the basis of the applicable law, the moving party is entitled to judgment.[14]

■ The uncontroverted facts in Grietz' affidavit show Cowen to be a bona fide purchaser. Defendants concede that Cowen purchased the shares in good faith and without notice of an adverse claim. Further, the facts show that Cowen did pay value. Staff had fulfilled all duties imposed on him as a seller and was entitled to proceeds of any sales. Cowen properly made the sales and by rule and practice was required to remit the sales price to Staff within five days of the sale even if the buyers had not paid. Cowen did sell. Upon Atlas' refusal to transfer and the subsequent buy-ins, Cowen became purchaser of the shares having paid Staff value therefor.

Subsection (e) of section 401(1) requires the transfer where it is *either* to a bona fide purchaser *or* "is in fact rightful." The Grietz affidavit does not raise any question as to the rectitude of the transfer. Staff delivered to Cowen all necessary indicia of authority to effect the transfer of the Global stock. He was the registered owner and he properly endorsed the certificate. As the certificate contained no restrictions on its face, it was in good deliverable form when it was delivered to Atlas. Atlas at no time prior to its ultimate transfer of the stock demanded additional indicia of authority from either Cowen or Staff, and there is no indication of what other possible requisites might have been obtained by Cowen from Staff which would have convinced Atlas to register the transfer.

The face of the Grietz affidavit thus fails to disclose any material issue of fact. Assuming the facts as stated in that affidavit to be true, the requirements of subsection (e) were satisfied and Cowen was entitled to judgment as a matter of law on the issue of Atlas' and Global's liability.

■ Atlas' second major point on appeal is that summary judgment was improper and the trial on damages flawed because the trial court failed to join Robert Staff as an indispensable party pursuant to Utah R.Civ.P. 19(a). Rule 19(a) requires the joinder of "persons having a joint interest." Thus, a necessary party is one whose presence is required for a full and fair determination of his rights as well as of the rights of the other parties to the suit.[15] The purpose of the rule is to guard against the entry of judgments which might prejudice the rights of such parties in their absence.[16]

■ Defendants have not shown that Staff has a joint interest with Cowen in the outcome of this case. The issue here is not resolution of the conflicting claims of ownership between Staff and Canada Ltd., but whether Atlas breached its statutory duty

13. Utah, 659 P.2d 1040 (1983).

14. *Id.* at 1044 (footnote omitted).

15. *Johnson v. Utah State Retirement Office,* Utah, 621 P.2d 1234, 1236 (1980); *Stone v. Salt Lake City,* 11 Utah 2d 196, 205, 356 P.2d 631, 637 (1960).

16. *Sanpete County Water Conservancy Dist. v. Price River Water Users Ass'n,* Utah, 652 P.2d 1302, 1306 (1982).

to transfer the Global stock to Cowen. Staff's joinder is not necessary to an adjudication of that question, and his interests will not be affected by the decree. Therefore, Staff was not an indispensable party to this action.

Atlas' last point on appeal is that both the trial court's basis for awarding damages and the computation of the amount of those damages were in error. The damages awarded, $213,923.30, were based on the total purchase price of the 24,000 Global shares sold from the account of Staff. Of that amount, $148,359.17 was paid to Staff and the remainder held by Cowen in Staff's cash account. Atlas contends that the loss of $148,359.17 was due to Cowen's negligence in paying Staff and that the loss of the remaining $65,564.13 was not suffered by Cowen since Cowen retained that amount.

 If there is evidence in the record to support the award of damages, this Court must affirm that award.[17] The trial court found that Cowen followed the usual and normal custom in the securities industry and the governing rules and regulations of the Securities and Exchange Commission and the NASD in remitting to Staff the net proceeds within five working days of each sale. The court further found that Cowen had no knowledge of any adverse

claim to the stock. No evidence was adduced at trial to contradict these findings or to support a claim of negligence on the part of Cowen. Further, the evidence adduced at trial supported Cowen's claim that it was not entitled to retain in its own name the remaining balance of the sales proceeds not yet disbursed to Staff. Finally, when Atlas did transfer the stock, Cowen was left holding 24,000 shares of essentially worthless stock, the price having dropped from approximately ten dollars to six and one-half cents per share. The trial court determined that Cowen was entitled to damages totaling the out-of-pocket amount paid to Staff either directly or to his cash account.

The award of damages by the trial court was amply supported by the record. The judgment is, therefore, affirmed. Costs are awarded to Cowen.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

17. *See, e.g., Clayton v. Crossroads Equipment* Co., Utah, 655 P.2d 1125 (1982).