1999 UT App 278

**Russell JOHNSON and Peter Johnson, Plaintiffs and Appellees,**

v.

**Arthur Stephen HIGLEY and Susan M. Higley, Defendants and Appellants.**

No. 981252–CA.

Court of Appeals of Utah.

Oct. 7, 1999.

John K. Mangum and Scott M. Ellsworth, Salt Lake City, Nielsen & Senior, PC, and B. Kent Ludlow, South Jordan, for Appellants.

Marc T. Wangsgard, Williams & Hunt, Salt Lake City, for Appellees.

Before WILKINS, P.J., DAVIS, and ORME, JJ.

## AMENDED OPINION [1]

ORME, Judge:

¶ 1 Defendants Arthur Stephen Higley and Susan M. Higley appeal the trial court's judgment in favor of plaintiffs Russell Johnson and Peter Johnson, enjoining Higleys from interfering with Johnsons' use of the Blue Lakes reservoirs on Higleys' property and awarding monetary damages for flooding. We affirm.

## BACKGROUND

¶ 2 "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Lake Philgas Serv. v. Valley Bank & Trust Co.*, 845 P.2d 951, 953 n. 1 (Utah Ct.App. 1993). *Accord Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991).

---

1. This Amended Opinion replaces the Opinion issued on April 1, 1999. In their petition for rehearing, appellants pointed out a discrepancy in the record. We grant appellants' petition on this limited ground and resolve the issue raised with this Amended Opinion.

¶ 3 Plaintiffs Johnson are brothers who inherited their Grantsville, Utah, property (the Johnson Ranch) from their father, Maxwell Johnson. In 1990, defendants Higley purchased property (the Higley property) adjacent to the Johnson Ranch, subject to "all easements and rights of way actual or of record or that may be apparent upon inspection of the surface." The Higley property contains the Blue Lakes reservoirs. The water in the Blue Lakes has been periodically used by Johnsons and their predecessors in interest—Paul Wrathall and others—since at least 1950 for crop irrigation and to provide water for cattle.

¶ 4 In 1946, Penina W. Anderson and J. Keith and Elba H. Brown, who then owned the Higley property, executed deeds (the Wrathall Deeds) conveying easements to Paul E. Wrathall.[2] Wrathall owned property, which is now owned by George C. Brown, near the Higley property. The Wrathall Deeds were promptly recorded with the Tooele County Recorder and granted Wrathall and "his successors in interest and assigns" the right to store water on Anderson's and Browns' land through "an unconditional easement and right in and to [the land]" which "shall be in force and effect perpetually." Neither deed mentioned any particular parcel of land, adjacent or otherwise, upon which Wrathall was required to use the water, or any particular purpose to which the water would be put. Both deeds encumbered enough land to contain water that runs there naturally, and the Brown deed specifically limited the encumbered land to the "natural reservoir basin." Later in 1946, Wrathall conveyed to Maxwell A. Johnson, Johnsons' father and predecessor in interest, an undivided one-half interest in the easement, any related dikes or dams, and the right to store water in the reservoirs. This conveyance (the Johnson Deed) was not recorded until 1995.[3] In 1986, Russell Johnson obtained the right to store water in the reservoir from the State Engineer. Defendants

Higley, however, have obtained no such state-sanctioned rights.

¶ 5 Beginning in December 1995, Higleys channeled water into the Blue Lakes. This deprived Johnsons of some space in which to store their water. In the summer of 1996, Higleys blocked Johnsons' irrigation ditch and directed the excavation of a canal into one of the reservoirs, draining Johnsons' stored water from the reservoir.

¶ 6 The Higley property also contained uncapped artesian wells, which are jointly owned by defendant Arthur Higley and five other individuals. The water from these wells followed the "Higley Ditch" through the Higley property and then along the western edge of the Johnson Ranch. Although the approved water rights pertaining to the wells permitted use of this water during the summer months only, the wells were not capped during the winter. In the winters of various years, the Higley Ditch, abutting the Johnson Ranch, would fill with debris and ice and overflow its banks, flooding a portion of the Johnson Ranch. To remedy this problem, Johnsons granted Higleys an easement across their property to install a pipeline for transporting the water that would otherwise flow in the Higley Ditch. However, Arthur Higley selected a pipe size that could not handle the water flow. As a result, in January and March of 1996 and from November 1996 through the summer of 1997, surplus water again flooded the Johnson Ranch.

¶ 7 Johnsons brought this action seeking compensatory damages for the repeated flooding, punitive damages for interfering with their water rights, and an order enjoining future flooding and interference with their right to store water in the Blue Lakes. Defendants Higley asserted various defenses, including that Johnsons' water rights were invalid because based upon an ineffectively conveyed easement and that Johnsons consequently had no water rights with which Higleys could interfere. Higleys alleged that

2. The record is unclear, however, whether at that time Wrathall, Anderson, or the Browns owned the portion of the current Higley Property located in the southwest quarter of the southwest quarter of Section 20, Range 5 West, Salt Lake Base and Meridian (Parcel X). Although the

Wrathall Deeds do not purport to convey any easement in Parcel X, part of the dikes and reservoir at issue in this case are within Parcel X.

3. The Johnson Deed describes the land containing the easement to include Parcel X.

even if the easement was otherwise valid, it was unenforceable against Higleys because, under the recording statute, they were bona fide purchasers for value and had no notice of the unrecorded Johnson Deed. Higleys also argued that the easement had been abandoned and that Johnsons' own conduct caused the flooding. Higleys also counterclaimed, arguing they owned the water in the Blue Lakes and that Johnsons interfered with their water rights in various ways.

¶ 8 Higleys also moved to compel joinder of indispensable parties, requesting joinder of the other five joint owners of the wells on the Higley property and all persons claiming an interest in Johnsons' claimed easement. Higleys argued that failure to join such parties may "impair or impede their ability to protect [their] interest as against the claims of [Johnsons]." The trial court denied the motion because the "action grows solely out of the alleged conduct of [Higleys], [Johnsons] seek no relief against anyone other than [Higleys, and] for the reasons set forth in Johnsons' memorandum in opposition to said motion."

¶ 9 After a bench trial, the court determined that Susan Higley was not monetarily liable to Johnsons, entered judgment against Arthur Higley on Johnsons' claims and Higleys' counterclaims, and permanently enjoined Higleys from interfering with Johnsons' use of the Blue Lakes and from diverting more water into the pipeline than it can carry. The court also awarded Johnsons $8,650 in damages, including $450 predicated on Higleys' one-sixth joint ownership in the artesian wells. In so doing, the trial court concluded that Johnsons owned an easement to store water in the Blue Lakes and that Higleys were not bona fide purchasers for value, without notice, against whom Johnsons' easement was invalid. Higleys appeal.

4. Except with regard to Parcel X, our decision on these contentions makes it unnecessary for us to reach the parties' arguments regarding whether Johnsons acquired an easement in some way other than by conveyance.

## ISSUES

¶ 10 Higleys raise several issues on appeal. First, they challenge the judgment enjoining them from interfering with Johnsons' right to store water in the Blue Lakes, arguing Johnsons have no such right because they lack a valid easement and that even if the easement were valid, it is unenforceable against Higleys under the recording statute.[4] Next, Higleys claim the trial court erred in denying their motion to compel joinder of indispensable parties or to dismiss. Finally, Higleys challenge the trial court's findings that Higley caused the flooding of the Johnson Ranch and that Higley interfered with Johnsons' water rights.

## JOHNSONS' EASEMENT

¶ 11 First, Higleys argue that Johnsons' easement, originally granted to Maxwell Johnson by Wrathall via the Johnson Deed, was ineffective because the easement was appurtenant and the grant did not convey the dominant estate. The interpretation of an unambiguous deed is a question of law, which we review for correctness. *See Gillmor v. Cummings*, 904 P.2d 703, 706 (Utah Ct.App.1995), *cert. denied*, 913 P.2d 749 (Utah 1996). Because the parties have not pointed to any ambiguity in the Wrathall Deeds granting the original easement, and—like the trial court—we see none, the interpretation of the Wrathall Deeds presents a question of law.

¶ 12 Without disputing the validity of the Wrathall Deeds, Higleys argue that the easement was appurtenant and, because it could not be transferred separately from the dominant estate, the subsequent conveyance of a one-half undivided interest in the easement to Maxwell Johnson was legally ineffective. Of course, if we conclude the easement is not appurtenant, but rather is a commercial easement in gross, their key argument fails, as a commercial easement in gross is fully transferable.[5] *See Crane v. Crane*, 683

5. Higleys' contention that this issue is not properly before this court, because inadequately raised below, is without merit. The pivotal determination of the trial court is the validity of the easement conveyed by the Johnson Deed. In determining the easement conveyed in the Johnson Deed was valid, the trial court necessarily ruled

P.2d 1062, 1066 (Utah 1984) (" 'Easements in gross, if of a commercial character, are alienable property interests.' ") (quoting Restatement of Property § 489 (1944)).

¶ 13 An easement in gross is not tied to any particular piece of land, and "grants to the holder the right to enter and make use of the property of another for a particular purpose." *Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n,* 899 P.2d 779, 781 (Utah Ct.App.1995). In contrast, an appurtenant easement, such as one for access or for constructing and maintaining a retaining wall, "inheres in the [grantee's] land, concerns the premises, and pertains to its enjoyment. It is incapable of existence separate from the particular land to which it is annexed." 25 Am.Jur.2d *Easements and Licenses* § 10 (1996). *See Abbott v. Nampa Sch. Dist. No. 131,* 119 Idaho 544, 808 P.2d 1289, 1295 (1991) (" 'An easement ... "appurtenant" ... serves the owner of [the benefitted land] in a way that cannot be separated from his rights in the land.' ") (quoting R. Cunningham et al., *The Law of Property* § 8.2, at 440 (1984)).

¶ 14 The Wrathall Deeds did not tie Wrathall's easement to the use of his land and, indeed, made no mention of his land at all. Rather, the deeds expressly provided for "unconditional" use and authorized storage "or other use of said water," without any reference to where or how the water was to be used. In so doing, the Wrathall Deeds created a right with an existence and value separate from Wrathall's land. Thus, Wrathall could have used the water for anything— even, as Johnsons note, "a flour mill or ice skating rink." Water quality aside, Wrathall could have bottled the water for sale in grocery stores or, upon securing appropriate rights of way, delivered it via irrigation ditches and pipelines to a distant parcel of land owned by others. As Higleys acknowledge in their alternative argument on prescriptive

easements, after storage of the water, "[w]hither it went was the affair of Paul Wrathall." Because the Wrathall Deeds created a right independent from ownership of Wrathall's land, they clearly conveyed an easement in gross.

¶ 15 In addition, because the easement was of a commercial character, Wrathall's transfer to Maxwell Johnson was fully effective. *See Crane,* 683 P.2d at 1066 ("[M]odern cases generally state that easements in gross are transferable when they are commercial in character."). " 'An easement in gross is of a commercial character when the use authorized by it results primarily in economic benefit rather than personal satisfaction.' " *Id.* at 1067 (quoting *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 143 S.E.2d 803, 807 (1965)). Accordingly, "easements in gross for railroads, telephone, telegraph and electric power lines, *pipelines, and ditches* ... have been held transferable almost without exception from early times." *Crane,* 683 P.2d at 1066 (emphasis added).

¶ 16 There is no question that Wrathall obtained the easement for economic benefit, not mere personal satisfaction. The record indicates that water stored in the Blue Lakes has been used primarily for crop irrigation and to provide water for cattle. Moreover, the record is devoid of any indication that Wrathall sought the easement primarily for some personal satisfaction such as aesthetics, a hobby, or personal recreation. Accordingly, the easement in gross was commercial and fully transferable. Consequently, the trial court correctly concluded that Wrathall's subsequent deed to Maxwell Johnson of a one-half undivided interest in the easement was legally effective and that Johnsons, as successors in interest to Maxwell Johnson, now own that interest in the easement.[6]

---

that the Wrathall Deeds conveyed a commercial easement in gross.

**6.** Higleys' argument that Johnsons abandoned the easement is without merit. Even assuming the perpetual easement was not actually used for a long time, Higleys failed to prove that Johnsons

intended to abandon the easement. Accordingly, we conclude Johnsons did not abandon their commercial easement in gross. *See Western Gateway Storage Co. v. Treseder,* 567 P.2d 181, 182 (Utah 1977) ("[A] right gained by conveyance may not be lost by non-use alone and ... an actual intent to abandon [must] be evident.").

## ISSUE ON REHEARING

¶ 17 In their petition for rehearing, Higleys brought to our attention the discrepancy between the easement descriptions in the Wrathall Deeds and the Johnson Deed. Higleys contend that because the Wrathall Deeds did not convey Wrathall an interest in Parcel X, Wrathall's purported transfer in the Johnson Deed of an easement in Parcel X was ineffective. It is true that "[o]ne can only convey as much estate in land as one actually has." *Drazich v. Lasson*, 964 P.2d 324, 327 (Utah Ct.App.1998) (citing Utah Code Ann. § 57–1–4 (1994)). However, although the Wrathall Deeds did not expressly include Parcel X in the easement, the record is unclear whether Wrathall owned an easement—or even the fee—in Parcel X through some other means. If Wrathall owned such an interest in Parcel X, he certainly had the ability to convey an easement via the Johnson Deed. Notwithstanding this lack of clarity, we need not remand for resolution of this factual issue because Johnsons and their predecessors established an easement by prescription. *See Crane v. Crane*, 683 P.2d 1062, 1064 (Utah 1984) ("Like other easements, an easement in gross can be acquired by prescription.").

¶ 18 "The requirements for establishing a prescriptive easement are open, notorious, adverse and continuous use of property for a period of twenty years." *Homer v. Smith*, 866 P.2d 622, 626 (Utah Ct.App.1993), *cert. denied, Homer v. Sandy Hills*, 878 P.2d 1154 (Utah 1994). We will only set aside the court's factual findings supporting its conclusion that a prescriptive easement exists if clearly erroneous. *See* Utah R. Civ. P. 52(a); *Homer*, 866 P.2d at 626.

¶ 19 Higleys argue chiefly that there was no adverse use of the Blue Lakes because the Wrathall Deeds gave permission to use the property, thereby creating a license. *See Edgell v. Canning*, 976 P.2d 1193, 1195 (Utah 1999) ("If the use is permissive, only a license results."). This argument is without merit. First, as pointed out by Hig-

leys, the Wrathall Deeds do not encompass Parcel X· and thus any license created does not extend to Parcel X. Second, the trial court found that for at least fifty years, the Blue Lakes—including on Parcel X—have existed as an improved and enlarged storage facility and that water has continuously been stored in the Blue Lakes since 1946.[7] Because there is no evidence to indicate any use of Parcel X was permissive and the easement was continuously used for more than twenty years, we presume adverse use. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998) ("[O]nce a claimant has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse.").

¶ 20 Higleys also argue that because water storage and release were periodically interrupted, the use was not continuous and no prescriptive easement exists. However, "[a] use need not be 'regular' or 'constant' in order to be 'continuous.' All that is necessary is that the use be as often as required by the nature of the use and the needs of the claimant." *Crane*, 683 P.2d at 1064.

¶ 21 The trial court found that water had been continuously stored in the Blue Lakes and that the timing of water storage and release coincided with water availability, climatic conditions, and crop needs. This finding is supported by George C. Brown's testimony that, with the exception of a few dry years, for thirty years water was stored in the Blue Lakes and emptied through irrigation ditches. Further, Russell Johnson testified that for over thirty years only he and his father stored water in the Blue Lakes. Water retention and release, at levels varying with the availability of and need for water, is a use consistent with the nature of a water storage easement in an arid place. Consequently, the trial court's finding that Johnsons' use was continuous was not clearly erroneous.

¶ 22 Accordingly, we reject Higleys assertion on rehearing that the trial court errone-

---

7. It is of no consequence that the use was accomplished by successive owners. *See Crane*, 683 P.2d at 1067 ("For purposes of computing the period of use necessary to establish an easement in gross, ... one user can tack his use onto the use of his predecessor.").

ously enjoined interference with Johnsons' easement with respect to Parcel X because Johnsons' owned no easement in Parcel X. The Johnsons' and their predecessors have used the Blue Lakes on Parcel X openly, notoriously, adversely, and continuously for a period in excess of twenty years. Consequently, even assuming Wrathall had no interest in Parcel X and was thus unable to convey an easement therein, Johnsons have acquired that easement by prescription.

## ENFORCEABILITY OF EASEMENT AGAINST HIGLEYS

 ¶ 23 Higleys also argue the trial court erred in concluding they were not bona fide purchasers for value, without notice, under the recording statutes, and, thus, that the Johnson Deed was enforceable against them. See Utah Code Ann. §§ 57–3–102, –103 (Supp.1998).[8] Although we accept the trial court's factual findings absent clear error, see Lake Philgas Serv. v. Valley Bank & Trust Co., 845 P.2d 951, 955 (Utah Ct.App. 1993), we review the application of law to those facts for correctness, albeit with some measure of deference to the trial court's assessment. See State v. Pena, 869 P.2d 932, 936–37, 939 (Utah 1994).

 ¶ 24 Whether or not recorded, a conveyance is valid as between the parties to it and as against those with notice of it. See Utah Code Ann. § 57–3–102(3) (Supp.1998); Crowther v. Mower, 876 P.2d 876, 879 (Utah Ct.App.), cert. denied, 890 P.2d 1034 (Utah

1994). See also Gregerson v. Jensen, 669 P.2d 396, 398 (Utah 1983) (describing recording statute's application). Thus, although Higleys were not parties to the Wrathall Deeds or the Johnson Deed, they may only invoke the recording statute's protections if they purchased the Higley property without notice of the easement.[9] Such notice may be actual or constructive. See, e.g., Diversified Equities, Inc. v. American Sav. & Loan Ass'n, 739 P.2d 1133, 1136 (Utah Ct.App. 1987). The Utah Supreme Court recently explained that constructive notice can take two forms. See First Am. Title Ins. Co. v. J.B. Ranch, 966 P.2d 834, 837–38 (Utah 1998). First, the recording statute provides that constructive notice is imparted when documents are properly recorded. See id. at 837. Second, constructive notice may arise from a duty to inquire when one has "the knowledge of certain facts and circumstances." Id. at 837–38.

 ¶ 25 When Higleys bought the Higley property in 1990, the Johnson Deed was not of record. However, the Wrathall Deeds were of record. These deeds fully described the easement and thereby gave constructive notice of it under the recording statute, although the subsequent assignment to Maxwell Johnson of an interest in the easement was not disclosed in any recorded document.[10] Indeed, Higleys "concede they had notice in 1990, when they purchased the land at issue[,] that Paul Wrathall had been given the Easement recorded in 1946."

8. With an amendment effective July 1, 1998, sections 57–3–2 and 57–3–3 were renumbered as sections 57–3–102 and 57–3–103, respectively. See 1998 Utah Laws ch. 61 §§ 2, 3. Because the statutory provisions in effect at the relevant times do not materially differ from those currently in effect, we cite to the most recent codifications, unless otherwise noted.

9. Section 57–3–103 sets forth the general rule for when a subsequent purchaser does not have notice of a prior conveyance that is unrecorded before recordation of the purchaser's interest:
Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:
(1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and

(2) the subsequent purchaser's document is first duly recorded.
Utah Code Ann. § 57–3–103 (Supp.1998).

10. It would be of significant concern to potential buyers of a tract of real estate that someone else has an easement to store water on the property they want to buy. In this case, that fact clearly appears of record from the Wrathall Deeds. Potential buyers can take their chances and buy the property, hoping that the easement has been abandoned or fallen into disuse, or they can defer purchase until they have gotten to the bottom of the matter, inquiring of the grantee or his heirs, the state engineer, and neighboring land owners in an effort to learn all they can about an apparently substantial encumbrance on the property. Apparently Higleys opted for the former, more risky course of action—or inaction.

¶ 26 In addition to their actual and record notice of the Wrathall Deeds, Higleys had "knowledge of certain facts and circumstances that [were] sufficient to give rise to a duty to inquire further." *Id.* at 838. When such duty arises, the person has " ' "notice of everything to which such inquiry might have led," ' " and " ' "[w]hen a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." ' " *Salt Lake, Garfield & W. Ry. Co. v. Allied Materials Co.*, 4 Utah 2d 218, 291 P.2d 883, 885 (1955) (citations omitted). Higleys inspected the Higley property and knew of the Blue Lakes, the related dikes, and the ditches leading to the Johnson ranch. Knowledge of these facts, coupled with actual knowledge of the Wrathall easement, gave rise to a duty to inquire whether Johnsons had some easement or other interest in the Blue Lakes. A simple telephone call to Johnsons could have confirmed or dispelled any question in this regard and would have led to Higleys learning of the conveyance to Maxwell Johnson and the interest claimed by his sons. *See, e.g., Diversified Equities*, 739 P.2d at 1135, 1137 (holding buyers fulfilled duty to inquire by making telephone calls and receiving confirmation of trust deed's satisfaction).

¶ 27 The recording statute's purpose " 'is to provide a method by which a transferee can protect himself from intervening claimants.' " *Horman v. Clark*, 744 P.2d 1014, 1016 (Utah Ct.App.1987) (citation omitted). This is because

> intending purchasers and encumbrancers should be protected against the evils of secret grants and secret liens and the subsequent frauds attendant upon them. To that end, it is provided that an innocent purchaser, having no notice of liens or adverse claims not disclosed by the records in the manner prescribed by the statute,

will hold land as against such claims and liens.

66 Am.Jur.2d *Records and Recording Laws* § 48 (1973) (footnote omitted). Unlike the intended beneficiaries of the recording statute, Higleys, while perhaps hazy on some details, knew they were purchasing property encumbered by a significant water storage easement—and they received exactly that. Higleys have suggested no way in which they would be prejudiced by having that "unconditional" and "perpetual[ ]" easement inure to the partial benefit of expressly permitted "assigns" rather than exclusively to Wrathall or his "successors in interest" through, say, inheritance. Higleys had notice of the encumbrance, its unconditional and perpetual nature, and its transferability.[11]

¶ 28 Accordingly, Higleys had actual and record notice of facts and circumstances—including the Wrathall Deeds—sufficient to disclose the easement's existence and to give rise to a duty to inquire further, which inquiry would have informed them of Johnsons' undivided one-half interest in Wrathall's easement and their long-standing use of Blue Lakes Water. Therefore, because Higleys had constructive notice of Johnsons' interest, the trial court correctly ruled that the recording statute did not apply and that the Johnson Deed was valid as against Higleys.

## INDISPENSABLE PARTIES

¶ 29 Higleys next claim the trial court erred in failing to join indispensable parties under Rule 19 of the Utah Rules of Civil Procedure.[12] " ' "[A] trial court's determination properly entered under Rule 19 will not be disturbed absent an abuse of discretion." ' " *Werner–Jacobsen v. Bednarik*, 946 P.2d 744, 746 (Utah Ct.App.1997) (citations omitted; alteration in original). Under Rule 19, the trial court must first determine

---

11. We note that if Johnsons were using more than the 50% easement interest to which they were entitled, that might be of concern to Wrathall's successors to the 50% interest he retained in the easement, but it is no legitimate concern of Higleys so long as total usage does not exceed the scope of the total easement.

12. Regarding Johnsons' claims for damages resulting from flooding, we note that Higleys were

not powerless to join the other parties they claim were necessary. *See* Utah Code Ann. § 78–27–41(1) (1996) ("[A]ny defendant who is a party to the litigation, may join as a defendant, in accordance with the Utah Rules of Civil Procedure, any person ... who may have caused or contributed to the injury or damage [to] determine[ ] their respective proportions of fault."); Utah R. Civ. P. 13(g).

whether a party is necessary. *See id.* at 746–47. "[A] necessary party is one whose presence is required for a full and fair determination of his rights as well as of the rights of the other parties to the suit." *Cowen & Co. v. Atlas Stock Transfer Co.,* 695 P.2d 109, 114 (Utah 1984). Rule 19 requires joinder of such parties "to guard against the entry of judgments which might prejudice the rights of such parties in their absence." *Id.* To properly make this determination, the trial court must "identify the specific facts and reasoning that support its conclusion that a party is or is not necessary under Rule 19(a)." *Werner–Jacobsen,* 946 P.2d at 747. Only if the party is necessary, but the court finds joinder unfeasible, must the court address indispensability under Rule 19(b). *See id.*

¶ 30 In this case, the trial court determined that joinder was not necessary and thus denied Higleys' motion to compel joinder. The court denied the motion "for the reasons set forth in Johnsons' memorandum in opposition to said motion," and, more specifically, because the "action grows solely out of the alleged conduct of defendants [and] Plaintiffs seek no relief against anyone other than defendants." Higleys argue that this cursory statement is insufficient under Rule 19, and they may well be right. *See id.; Seftel v. Capital City Bank,* 767 P.2d 941, 945 (Utah Ct.App.1989) ("[A]bstract generalizations are not a substitute for the analysis required under Rule 19."), *aff'd sub nom. Landes v. Capital City Bank,* 795 P.2d 1127 (Utah 1990). The court's analysis is rather terse, although slightly more illuminating than was the order in *Werner–Jacobsen,* in which the trial court referred only to " 'the reasons set forth in the supporting memoranda' without discussion or analysis." *Werner–Jacobsen,* 946 P.2d at 747 (citation omitted).

¶ 31 Notwithstanding any error in this regard, we may affirm if, upon our review of the record, "the reasons set forth in Johnsons' memorandum in opposition to said motion," which the court identified as the primary basis for its decision, support the court's ultimate conclusion. *See id.* In their memorandum, Johnsons argued that the parties Higleys sought to join were not necessary because their interests would not be prejudiced by the suit and the rights of Johnsons and Higleys would be fully and fairly determined without joinder. In support of their position, Johnsons pointed to the nature of the claims for which they sought relief and demonstrated that the claims arose only from Higleys' conduct or failure to act.

¶ 32 In particular, Johnsons asserted that the flooding prior to installation of the pipeline occurred only during Arthur Higley's turn among the joint owners to use the well water. Regarding flooding after installation of the pipeline, Johnsons sought relief only for damages caused by Arthur Higley's incorrect sizing of the pipeline. The essence of Higleys' concerns with nonjoinder was that they would be held liable for damages attributable to the other joint well owners. However, because Higleys could only be held liable for damages in proportion to their own fault, *see* Utah Code Ann. § 78–27–40(1) (1996), joinder was not necessary for a full and fair determination of rights vis-a-vis Johnsons and Higleys on claims arising only from Higleys' conduct.

¶ 33 Johnsons' claims were expressly limited to Higleys' acts or omissions. Indeed, the trial court determined that as a one-sixth owner of the wells, Arthur Higley was only one-sixth liable for Johnsons' damages caused by the failure to control the water from those wells. Moreover, the joint well owners suffered *no risk* of future prejudice from a determination in this action because Higleys could not later seek contribution, *see id.* § 78–27–40(2); *National Serv. Indus. v. B.W. Norton,* 937 P.2d 551, 555 (Utah Ct. App.), *cert. denied,* 945 P.2d 1118 (Utah 1997), and because Johnsons could not impose *multiple or inconsistent obligations* through a later suit.[13]

---

13. For example, in a subsequent suit, if a court determined the joint owners were privies of Higleys, nonjoinder would bar Johnsons from relitigating claims that were, or could have been, litigated in this action under the claim preclusion branch of res judicata. *See Salt Lake City v. Silver Fork Pipeline Corp.,* 913 P.2d 731, 733 (Utah 1995). If not privies of Higleys, the joint owners could fully advance their own position on any issues at that time. *See id.*

¶ 34 Likewise, Johnsons sought relief only as against Higleys on their claims alleging interference with their right to store water in the Blue Lakes. This was not a quiet title action in which Johnsons sought to settle the rights in the Blue Lakes with respect to all persons. Instead, the issue of Johnsons' easement arose only because Higleys raised it, trying to show that Johnsons had no valid water rights with which Higleys could interfere. Hence, the trial court made no determination of the rights of any other person regarding the Blue Lakes. Accordingly, other individuals claiming an interest in the Blue Lakes were irrelevant to this action, their rights are unaffected by it, and joinder was unnecessary for a full and fair determination of the parties' rights as between themselves. Consequently, we see no abuse of discretion and affirm the court's denial of Higleys' motion to compel joinder of additional parties.

## SUFFICIENCY OF THE EVIDENCE

¶ 35 Finally, Higleys argue the evidence was insufficient to hold Arthur Higley solely liable for damages resulting from the flooding of the Johnson Ranch from November 1996 through the summer of 1997 or to conclude that he interfered with Johnsons' water rights. Regarding the pipeline, Higleys argue that other individuals' conduct caused its incorrect sizing and that the pipeline size did not cause the flooding. Concerning interference with Johnsons' water rights, Higleys argue that another person, Rulon Higley, caused the loss of Johnsons' water in the Blue Lakes.

¶ 36 Whether causation in fact and proximate cause have been established present questions of fact. *See House v. Armour of Am., Inc.,* 886 P.2d 542, 551 (Utah Ct.App.1994), *aff'd,* 929 P.2d 340 (Utah 1996); *Sampson v. Richins,* 770 P.2d 998, 1006 (Utah Ct.App.), *cert. denied,* 776 P.2d 916 (Utah 1989). "To successfully challenge a trial court's findings of fact on appeal, '[a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be "against the clear weight of the evidence." ' " *Valcarce v. Fitzgerald,* 961 P.2d 305, 312

(Utah 1998) (citations omitted; alteration in original). *See also West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991) ("[T]he challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists.").

¶ 37 Higleys fail to marshal the evidence *supporting* the findings they challenge on sufficiency of the evidence grounds. Instead, Higleys point to evidence tending to rebut a finding of causation. With respect to the flooding claim, Higleys fail to address testimony of various witnesses that Arthur Higley managed the water for the six joint owners, that he calculated and selected the pipeline's size, and that if he had allowed the pipeline's excess water to flow through the Higley ditch, the flooding would have been prevented. Regarding the interference with Johnsons' water rights, Higleys fail to address the testimony that Higley instructed a backhoe operator to destroy Johnsons' ditch and that he diverted well water into the Blue Lakes to deprive Johnsons of storage space. Because Higleys have failed to fully marshal the evidence *supporting* the factual findings, we assume they are adequately supported by the evidence. Higleys' challenge to the trial court's findings therefore fails.

## CONCLUSION

¶ 38 We conclude that Johnsons own a commercial easement in gross, which was validly transferred to Johnsons' predecessor in interest by the Johnson Deed and is fully enforceable against Higleys. With respect to Parcel X, Johnsons have acquired a prescriptive easement. Further, although the trial court may have erred in failing to more fully identify the specific facts and reasoning it employed in denying Higleys motion to compel joinder of indispensable parties, any such error was harmless, and its decision in this regard was not an abuse of discretion. Finally, we reject Higleys' challenges to the trial court's findings that Arthur Higley's conduct caused the flooding on the Johnson

Ranch and that Arthur interfered with Johnsons' water rights. Accordingly, we affirm.[14]

¶ 39 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and JAMES Z. DAVIS, Judge.

14. Higleys assert that the trial court erred in enjoining any use of the Blue Lakes by Higleys. This, however, was not the court's judgment. Rather, the court only enjoined interference with Johnsons' easement. Accordingly, Higleys are enjoined from interfering with the easement described in the Wrathall Deeds and, with respect to Parcel X, acquired through prescription. Otherwise, as owners, Higleys may use their property in any way they wish short of interfering with the rights of easement holders. *See, e.g., Wykoff v. Barton*, 646 P.2d 756, 759 (Utah 1982); *Weggeland v. Ujifusa*, 14 Utah 2d 364, 366, 384 P.2d 590, 591 (1963) (holding that owner of a servient estate is restricted only to extent of easement and may otherwise "use [the property] in any manner they desire which does not interfere with the privilege").