2014 UT App 90

Mark WHITE and Irene White,
Plaintiffs and Appellants,

v.

Peter JEPPSON; Alan Williams; Time
and Money, LLC; Money Mastery, LLC;
Desert Fortress, LLC; Piney Place,
LLC; Time and Money Mastery Market-
ing; Business Development, LC; and
Two Big Success, LLC, Defendants and
Appellees.

No. 20120997–CA.

Court of Appeals of Utah.

April 24, 2014.

Richard R. Arnold Jr. and D. Scott Crook, for Appellants.

James D. Gilson and Nathan R. Denney, for Appellees.

Judge GREGORY K. ORME authored this Opinion, in which Judges MICHELE M. CHRISTIANSEN and JOHN A. PEARCE concurred.

Opinion

ORME, Judge:

¶ 1 Plaintiffs Mark and Irene White challenge the district court's judgment in favor of Defendants.[1] The district court granted in part the Defendants' motion for judgment on the pleadings because of Plaintiffs' failure to join indispensable parties. It also granted Defendants' motion targeting Plaintiffs' failure to timely designate an expert witness.[2] We reverse and remand for further proceedings.

BACKGROUND [3]

¶ 2 In 2005, in an effort to learn how to manage money more effectively, Plaintiffs

1. The primary defendants in this case are Peter Jeppson and Alan Williams. The remaining named defendants are entities related to Jeppson and Williams. References in this opinion to "Defendants" mean Jeppson and Williams individually, unless the context requires otherwise.

2. Defendants captioned this motion as one for judgment on the pleadings and for summary judgment, and the district court characterized its ruling as a "judgment on the pleadings and for summary judgment." Because the court considered matters outside the pleadings, we treat Defendants' motion as one for summary judgment. See Utah R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the

pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]").

3. In reviewing the facts relevant to the district court's grant of Defendants' motion for judgment on the pleadings, we accept the factual allegations in the complaint as true. See Intermountain Sports, Inc. v. Department of Transp., 2004 UT App 405, ¶ 7, 103 P.3d 716. And because we treat Defendants' other motion as one for summary judgment, see supra note 2, we recite all remaining facts and reasonable inferences that may be drawn from them in the light most favorable to Plaintiffs as the nonmoving party. See Orvis v. Johnson, 2008 UT 2, ¶ 6, 177 P.3d 600.

enrolled in a financial course offered through a community education program. The course was taught by Defendants. Following the eight-week course, Plaintiffs met with Jeppson personally and entered into an agreement for Jeppson to become their personal financial coach. After the initial coaching sessions, Defendants began offering Plaintiffs different investment opportunities and introducing them to individuals who had potential real estate investment projects.

### A. Stadig Transactions

¶ 3 In 2005, Jeppson introduced Plaintiffs to a real estate broker named Todd Stadig. Plaintiffs claim that Jeppson "pushed" them to invest and that they eventually invested more than $3 million with Stadig and his related entities. Plaintiffs also allege that Jeppson failed to disclose that Stadig owed him large sums of money and that Jeppson and Stadig had "finder's fees" arrangements whereby Stadig paid Jeppson for each person Jeppson convinced to invest with Stadig.

¶ 4 Plaintiffs' investments with Stadig were not profitable, and they brought a separate action against him and related entities in 2009. They did not name or join Defendants as parties to that suit. In 2011, Plaintiffs obtained a judgment against Stadig for the full amount that they invested with him.

### B. Packer Transaction

¶ 5 In the fall of 2005, Jeppson introduced Plaintiffs to an attorney named James Packer. Packer administered a real estate investment trust (the Packer REIT). Plaintiffs claim that while they investigated the Packer REIT, "Jeppson took a prominent role in encouraging them to invest" and made "representations about the investment." Jeppson also represented to them that Defendants were invested in the Packer REIT and were receiving "big checks" from their investment.

¶ 6 Plaintiffs eventually invested over $800,000 in the Packer REIT and subsequently lost nearly all of it. According to Plaintiffs, they later learned not only that Defendants had never invested with the Packer REIT, but that Jeppson, Williams, and their related entities had some sort of consulting relationship with the Packer REIT. Plaintiffs initiated a separate legal proceeding against Packer and the Packer REIT in 2010. Defendants were not joined as parties to that suit, and it remains pending in the Fourth District Court.

### C. West Yellowstone Transaction

¶ 7 In 2006, Jeppson introduced Plaintiffs to a real estate agent named Roger Beattie. Beattie presented Plaintiffs with the opportunity to purchase a motel that he managed in West Yellowstone, Montana. Plaintiffs allege that Jeppson encouraged them to purchase the motel and persuaded them that Williams should serve as a management consultant. Plaintiffs purchased the motel, allowing Beattie to continue managing the property, and hired an entity owned by Defendants to provide management consulting services through Williams. Plaintiffs allege that the motel did not meet their monthly income goals as Jeppson claimed it would, and Plaintiffs eventually sold it to Beattie in 2011 for the same amount as their purchase price.

### D. Nunley Court Transaction

¶ 8 In 2007, Defendants and a real estate agent formed Araunah, LLC in order to develop two townhouses on Nunley Court in Holladay, Utah. At Defendant's urging, Plaintiffs invested in the development. Plaintiffs did not realize any income from their investment because the homes never sold, and a bank eventually foreclosed on the properties.

### E. This Lawsuit

¶ 9 As a result of Plaintiffs' losses in connection with these four transactions, they filed their complaint in district court alleging two causes of action against Defendants: (1) breach of fiduciary duty and (2) violation of Utah securities laws. Defendants filed a motion for judgment on the pleadings for failure to join indispensable parties. The district court granted Defendants' motion insofar as it related to Plaintiffs' claims involving Stadig, Beattie, and Packer, whom the district court deemed necessary, but denied the motion as it related to Plaintiffs' claims involv-

ing the Nunley Court transaction. Defendants also filed a motion for judgment on the pleadings and for summary judgment based on Plaintiffs' failure to designate an expert. The district court granted this motion because "in the absence of expert testimony on the requisite standard of care, causation, securities, and damages, Plaintiffs will be unable to prove their claims at trial." Consequently, the district court dismissed all of Plaintiffs' claims against Defendants. Plaintiffs appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 Plaintiffs contend that the district court abused its discretion by ruling that they failed to join indispensable parties under rule 19 of the Utah Rules of Civil Procedure. "[A] trial court's determination properly entered under Rule 19 will not be disturbed absent an abuse of discretion." *Seftel v. Capital City Bank,* 767 P.2d 941, 944 (Utah Ct.App.1989).

¶ 11 Plaintiffs also argue that the district court erred in granting Defendants' motion premised on Plaintiffs' failure to timely designate an expert. We treat this motion as one for summary judgment. *See supra* note 2. "We review a summary judgment determination 'for correctness, granting no deference to the [district] court's legal conclusions.'" *Salt Lake County v. Holliday Water Co.,* 2010 UT 45, ¶ 14, 234 P.3d 1105 (alteration in original) (quoting *Hansen v. America Online, Inc.,* 2004 UT 62, ¶ 6, 96 P.3d 950).

## ANALYSIS

### I. Failure to Join Indispensable Parties

■ ¶ 12 Plaintiffs argue that the district court abused its discretion by determining that Stadig, Packer, and Beattie were indispensable parties to Plaintiffs' action. In considering whether unjoined parties are indispensable under rule 19 of the Utah Rules of Civil Procedure, we must first decide whether a party is necessary. *See Johnson v. Higley,* 1999 UT App 278, ¶ 29, 989 P.2d 61. " '[A] necessary party is one whose presence is required for a full and fair determination of his rights as well as of the rights of the other parties to the suit.' " *Id.* (alteration

in original) (quoting *Cowen & Co. v. Atlas Stock Transfer Co.,* 695 P.2d 109, 114 (Utah 1984)). "Rule 19 requires joinder of such parties 'to guard against the entry of judgments which might prejudice the rights of such parties in their absence.' " *Johnson,* 1999 UT App 278, ¶ 29, 989 P.2d 61 (quoting *Cowen,* 695 P.2d at 114). "Only if the party is necessary, but the court finds joinder unfeasible, must the court address indispensability under Rule 19(b)." *Johnson,* 1999 UT App 278, ¶ 29, 989 P.2d 61.

¶ 13 Assuming joinder will not deprive the court of its jurisdiction, a party is necessary to an action if

"(1) in [the party's] absence complete relief cannot be accorded among those already parties, or (2) [the party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [the party's] absence may (i) as a practical matter impair or impede [the party's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the party's] claimed interest."

*Turville v. J & J Properties, LC,* 2006 UT App 305, ¶ 36, 145 P.3d 1146 (alterations in original) (quoting Utah R. Civ. P. 19(a)(1)-(2)). We conclude that Stadig, Packer, and Beattie are not necessary parties under rule 19.

■ ¶ 14 First, complete relief can be granted among the parties in the absence of Stadig, Packer, and Beattie. The district court concluded that these parties were necessary because any damages that Plaintiffs suffered as a result of their failed investments would necessarily implicate the actions or inaction of Stadig, Packer, and Beattie. Defendants contend that joinder is therefore "necessary to prevent separate actions and inconsistent rulings on the issues of causation and damages." However, it "has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.,* 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990). *See also PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 204 (6th Cir.2001) ("[M]ultiple

proceedings and inconsistent results . . . can occur whenever joint tortfeasors are not parties to the same lawsuit. This form of prejudice, however, does not require a finding that joint tortfeasors are necessary or indispensable parties [for purposes of rule 19 of the Federal Rules of Civil Procedure].").[4]

¶ 15 Defendants contend that *Turville v. J & J Properties, LC*, 2006 UT App 305, 145 P.3d 1146, should nonetheless control because, like the unjoined party in *Turville*, each of the unjoined parties in this case was an "instrumental participant" in the harm that is the subject of Plaintiffs' claims. *See id.* ¶ 39. However, the unusual factual backdrop of *Turville* is readily distinguishable from the facts of this case. In *Turville*, the plaintiff named a defendant in his individual capacity, but the defendant died before he was served with the complaint and his estate was not substituted as a party. *Id.* ¶¶ 8–10, 17. We concluded that because the plaintiff "named or included [the defendant] in his claims as the major, if not the sole, actor responsible for [the plaintiff's] alleged damages," his estate was a necessary party. *Id.* ¶ 42.

¶ 16 In so concluding, we referred to a federal district court case holding, conversely, that where a plaintiff " 'makes no claims against [the unjoined party,] it is clear [under rule 19] that complete relief can be granted in its absence.' " *Id.* ¶ 40 (first alteration in original) (quoting *Mallalieu–Golder Ins. Agency v. Executive Risk Indem.*, 254 F.Supp.2d 521, 525 (M.D.Pa.2003)). Such is the case here. Plaintiffs have made no claims against Stadig, Packer, or Beattie in this lawsuit. Indeed, Plaintiffs' claims in this case "were expressly limited to [Defendants'] acts or omissions," and they have already sought resolution of their claims against the unjoined parties in separate suits. *See Johnson*, 1999 UT App 278, ¶ 33, 989 P.2d 61. Accordingly, as Plaintiffs' claims are strictly limited to Defendants' conduct, complete relief can be granted among Plaintiffs and Defendants without joining Stadig, Packer, and Beattie.

■ ¶ 17 Similarly, entry of a judgment against Defendants would not prejudice the rights of the unjoined parties in their absence, *see id.* ¶ 29, nor do Stadig, Packer, and Beattie claim "an interest relating to the subject of the action," *see* Utah R. Civ. P. 19(a)(2). Plaintiffs' claims are limited to the acts or omissions of Defendants, and the unjoined parties have no interest in Plaintiffs' claims against Defendants for breach of fiduciary duty or under Utah securities laws.[5] *See Huber v. Taylor*, 532 F.3d 237, 249 (3d Cir.2008) ("That [the defendant] and [the unjoined party] may have 'jointly owed fiduciary duties to their mutual clients' does not mean that they shared 'an interest relating to the subject of the action' for purposes of Rule 19(a) analysis."). Indeed, Plaintiffs are the only parties with any known interest in the claims they have asserted in this case. Therefore, there is also no risk that "any of the persons already parties" will be subject to "double, multiple, or otherwise inconsistent obligations by reason of [Stadig's, Packer's, and Beattie's] claimed interest."[6] *See* Utah R. Civ. P. 19(a)(2)(ii).

4. Rule 19 of the Federal Rules of Civil Procedure is "substantially similar" to rule 19(a) of the Utah Rules of Civil Procedure, and it is therefore appropriate for this court to consider interpretations of the equivalent federal rule. *See Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶ 7 n. 2, 53 P.3d 947.

5. While the district court expressed concerns about potential res judicata problems arising in this case, those concerns appear to be wide of the mark. Res judicata has no bearing on whether a party is necessary under rule 19 but is an affirmative defense that may be raised in the pleadings. *See* Utah R. Civ. P. 8(c); *Jackson v. Rich*, 28 Utah 2d 134, 499 P.2d 279, 280 (1972). To the extent that res judicata has any potential bearing on these parties, it should have already

been pleaded in this case or may be pleaded in any subsequent suits arising out of the same subject matter.

6. Defendants assert that any judgment against them in this action "will amount to Plaintiffs receiving a double recovery." However, rule 19 seeks to prevent double, multiple, or inconsistent *obligations* and does not prohibit double recovery. *See* Utah R. Civ. P. 19(a)(2)(ii) (emphasis added). That said, under Utah law, if a plaintiff improperly seeks previously compensated damages, "the court should, at the conclusion of the trial, either on its own initiative or on motion of a party, reduce the judgment by the amount of those previously compensated damages, and thereby prevent double recovery." *See Ohio Cas. Ins. Co. v. Brundage*, 674 P.2d 101, 102 (Utah

¶ 18 In sum, Plaintiffs have sought recovery from Defendants based only on Defendants' acts or omissions. Accordingly, the presence of Stadig, Packer, and Beattie is not required for a full and fair determination of their rights or the rights of Defendants and Plaintiffs. *See Johnson v. Higley*, 1999 UT App 278, ¶ 29, 989 P.2d 61. Additionally, no indispensability analysis under rule 19(b) is required because we conclude that the unjoined parties are not even necessary parties under rule 19(a). It follows that the district court exceeded the bounds of sound discretion in ruling as it did.

## II. Failure to Designate an Expert Witness

■ ¶ 19 Plaintiffs next contend that the district court erred in granting Defendants' motion for summary judgment for failure to timely designate an expert witness. In granting Defendants' motion, the court concluded that "in the absence of expert testimony on the requisite standard of care, causation, securities, and damages, Plaintiffs will be unable to prove their claims at trial."

■ ¶ 20 Under Utah law, it is true that where "the average person has little understanding of the duties owed by particular trades or professions, expert testimony must ordinarily be presented to establish the standard of care." *Wycalis v. Guardian Title*, 780 P.2d 821, 826 n. 8 (Utah Ct.App.1989). For example, courts have previously required expert testimony in cases involving the standard of care for doctors, architects, engineers, insurance brokers, and professional estate executors. *See id.* Indeed, the Eighth Circuit Court of Appeals has deemed expert testimony necessary under circumstances comparable to this case that involved the standard of care for an investment trading advisor. *See S & A Farms, Inc. v. Farms.com, Inc.*, 678 F.3d 949, 954–55 (8th Cir.2012).

¶ 21 Relying on this general principle, the district court determined that expert testimony was required on all claims in this case because it involves "complex real estate investments that involved multiple parties and

types of properties, and various financing arrangements spanning a period of several years." The court also noted that Plaintiffs invested during "one of the sharpest declines in the real estate market in decades." However, while we agree that this case involves some issues that go beyond the common knowledge and understanding of a layperson, the district court's broad brush approach did not adequately assess the need for an expert on each claim, or, more precisely, on each element of Plaintiffs' claims.

■ ¶ 22 Our concern is underscored by analogy to our cases discussing the trial court's role in ensuring the reliability of expert witnesses. We have noted that when evaluating potential experts, trial judges perform "an important gatekeeping function, intended to ensure that only reliable expert testimony will be presented to the jury." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 31, 269 P.3d 980. *See also* Utah R. Evid. 702 advisory committee note (explaining that rule 702 of the Utah Rules of Evidence "assigns to trial judges a 'gatekeeper' responsibility to screen out unreliable expert testimony"). And "the trial court must become more involved, and its gatekeeping role becomes more challenging out of necessity, as the case and expert testimony become more complex." *Gunn Hill*, 2012 UT App 20, ¶ 32, 269 P.3d 980. We conclude that the same general principles apply to the district court's determination of whether expert testimony is required on any given issue in this case. Especially in a complex, multi-issue and multi-party case like this one, the district court should carefully analyze the need for expert testimony on a claim-by-claim, element-by-element basis, rather than taking the blanket approach that it did here.

■ ¶ 23 For instance, Plaintiffs' claim, if true, that Defendants breached their fiduciary duty to Plaintiffs when they lied about having invested in the Packer REIT and having received "big checks" from the investment is a clear example of where expert testimony is not needed. The gravity of investment advisors misrepresenting their

1983) (citation and internal quotation marks omitted).

participation in an investment and the consequence of lying about, or even exaggerating, the return they have received on their investment is certainly "within the common knowledge and experience of the layman." *Cf. Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980) (holding that expert testimony is unnecessary in medical malpractice cases "where the propriety of the treatment received is within the common knowledge and experience of the layman"). However, because we are not in the best position to determine which claims require expert testimony and which claims do not, we reverse the grant of summary judgment and remand the case to the district court to analyze the need for expert testimony on each of Plaintiffs' claims.

## CONCLUSION

¶ 24 Plaintiffs' claims focus only on the acts or omissions of Defendants, and therefore the unjoined parties are not necessary parties that must be joined under rule 19 of the Utah Rules of Civil Procedure. We reverse the district court's determination to the contrary. Additionally, we reverse the summary judgment and remand for the court to make particularized decisions regarding which, if any, of Plaintiffs' claims require expert testimony.