*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 51**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

REPEREX, INC., BRAD BALL, and DAVID BALL,
*Respondents and Cross-Petitioners*,

*v.*

COLDWELL BANKER COMMERCIAL, DUANE BUSH,
CHILD, VAN WAGONER & BRADSHAW PLLC,
and J. RUSSTON BRADSHAW,
*Petitioners and Cross-Respondents*.

No. 20170354
Filed September 18, 2018

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Todd M. Shaughnessy
No. 110916924

Attorneys:

J. Spencer Ball, Salt Lake City, for respondents and cross-petitioners

Joseph M. Stultz, Salt Lake City, for petitioners and
cross-respondents Coldwell Banker Commercial and Duane Bush

Tyler S. Foutz, Salt Lake City, Shane W. Norris, Midvale,
for petitioners and cross-respondents
Child, Van Wagoner & Bradshaw PLLC and J. Russton Bradshaw

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the court, in
which JUSTICE HIMONAS, JUSTICE PEARCE, JUSTICE PETERSON, and
JUDGE DAVIS joined.

Having recused himself, CHIEF JUSTICE DURRANT does not participate
herein; DISTRICT JUDGE LYNN W. DAVIS sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Reperex, Inc. bought a business in a deal brokered by Coldwell Banker Commercial. After the purchased business failed, Reperex sued Coldwell and Bradshaw, an accounting firm, for fraud, negligent misrepresentation, and breach of fiduciary duty. All of the claims against Coldwell were dismissed before trial. The negligent fraud and breach of fiduciary duty claims against Bradshaw were likewise dismissed. The remaining fraud claim went to trial, where Bradshaw prevailed.

¶2 Reperex appealed. The court of appeals affirmed as to Bradshaw but reversed as to Coldwell. Coldwell and Reperex filed cross-petitions for certiorari. We granted both petitions.

¶3 The first question presented in Coldwell's petition is whether Coldwell can be held liable despite a nonreliance clause in Coldwell's contract with Reperex. We determine that the nonreliance clause protects Coldwell from representations that it passed along from May's (the company Reperex purchased), but not from misrepresentations that Coldwell made independently. And we uphold the enforceability of this provision despite Reperex's public policy challenge to it. The second question presented by Coldwell is whether expert testimony was required to sustain Reperex's breach of fiduciary duty claim. We hold that it was not required because the misrepresentations alleged by Reperex were clearly material.

¶4 Reperex's cross-petition also raises two issues. The first concerns the question whether Reperex has a basis to assert a claim against Bradshaw under Utah Code section 58-26a-602, a statute that limits claims against CPAs to those in "privity of contract" or that can establish the applicability of the general requirement of privity. We affirm the court of appeals' decision that Reperex failed to establish a basis for overcoming the protections available to Bradshaw under this statute. The second question in Reperex's cross-petition is whether Reperex was entitled to a jury instruction on nondisclosure fraud. The court of appeals affirmed the district court's refusal to give such an instruction on the ground that Utah Code section 58-26a-602 "occupies the field" and forecloses a duty of disclosure by not expressly prescribing one. We reverse on this issue and remand for a determination of whether Bradshaw owed Reperex a duty under the common law.

I

¶5 Reperex, Brad Ball, and David Ball (collectively, "Reperex") purchased a company called May's Custom Tile in a transaction that was brokered by Coldwell Banker Commercial and Duane Bush (collectively, "Coldwell"). Coldwell represented both Reperex and May's seller, Steve May, in a "dual agency capacity."

¶6 In the course of the transaction, an accounting firm called Child, Van Wagoner & Bradshaw[1] provided some financial information to Reperex about May's. May's had previously hired Bradshaw to prepare its tax returns. And when another party had considered buying May's, Bradshaw had agreed to share the company's tax returns with that potential buyer. So when Reperex was looking into buying the company, May's asked Bradshaw to share "similar documents" with Reperex. Bradshaw allowed Reperex to look through those documents at its office in a due diligence meeting. The details of that interaction are disputed.

¶7 At some point after the purchase, May's went out of business. Reperex sued Coldwell, alleging various nondisclosures and misrepresentations. First, some of the financial statements Coldwell gave Reperex indicated that May's profits in 2006 were over $300,000. But according to Reperex, the actual profits for that year were only $74,000—a fact that Bradshaw had mentioned to Coldwell over email. Second, when Reperex asked whether May's had commingled funds with a sister business, Coldwell said it hadn't even though Bradshaw had told Coldwell earlier that in fact there had been a "lot of intercompany mingling." Third, Coldwell failed to inform Reperex that one of May's clients, which accounted for 40percent of its business, had gone bankrupt the year before. Fourth, Coldwell told Reperex that it would take the company 90 days to acquire the license they needed to run the business, when it actually took three years to qualify. On these facts Reperex asserted claims for fraud, negligent misrepresentation, and breach of fiduciary duty against Coldwell.

¶8 Reperex asserted the same three claims against Bradshaw. It alleged that Bradshaw had provided "attestation services" to Reperex and that it had made several misrepresentations at the due

---

[1] The firm acted primarily through J. Russton Bradshaw. We refer to the person and the firm collectively as "Bradshaw."

diligence meeting. Bradshaw contests most of these basic facts and asserts that it simply handed over documents and gave mostly noncommittal answers to the questions that Reperex asked at the meeting. Bradshaw denies that it provided "attestation services" or that there was an agreement to provide such services.

¶9 Coldwell moved for judgment on the pleadings, asserting that it was immune from liability because Reperex had disclaimed any reliance on Coldwell's representations. The contract between Coldwell and Reperex included an acknowledgment that Reperex was "relying on its own inspection of the involved business and the representations of the Seller and not of [Coldwell] and/or any of its agents or employees" with regard to any material facts about the business. The agreement also included an acknowledgment that Coldwell had not "verified the representations of the Seller, and should any representations be untrue, Buyer agrees to look solely to Seller for relief and to indemnify [Coldwell] . . . and hold them harmless in connection with all losses and damages caused to Buyer thereby." Reperex argued in response that this provision was effectively a disclaimer of liability for fraud, making it void as against public policy.

¶10 The district court granted judgment on the pleadings as to the fraud and negligent misrepresentations claims, but denied the motion as to the breach of fiduciary duty claim. In disposing of the fraud and negligent fraud claims, the court relied on an unpublished court of appeals opinion called *Ruf, Inc. v. Icelandic Investments, Inc.*, 1999 UT App. 103, 1999 WL 33244779. In that case, the court of appeals held that releases like the one in this case are distinguishable from releases from liability for fraud, because they merely "define[] roles." *Id.* at *1 n.1. It reasoned that such provisions don't permit fraud—by disclaiming the essential element of reliance they instead render the plaintiff unable to *prove* fraud. *Id.* at *1.

¶11 At the close of expert discovery, Coldwell moved for summary judgment on the remaining breach of fiduciary duty claim. It argued that the claim failed as a matter of law because Reperex had not designated the requisite experts to establish the elements of that claim. The district court agreed and granted summary judgment.

¶12 Bradshaw moved for summary judgment on the claims against it as well. In so doing Bradshaw relied on Utah Code section 58-26a-602, which states generally that a CPA cannot be liable "to persons with whom they are not in privity of contract for civil

damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by that [CPA]." The statute also recognizes two exceptions: one for fraud claims and another where there is a writing indicating an intent to rely on the CPA's representations. UTAH CODE § 58-26a-602(1) & (2).

¶13 Bradshaw argued that this statute precludes liability, as Reperex was not in privity of contract or able to establish either exception. The district court agreed that Reperex could not show that it was in privity or that the writing exception was satisfied. It accordingly granted summary judgment on the negligent misrepresentation and breach of fiduciary duty claims. In light of the fraud exception, however, the district court allowed the fraud claim against Bradshaw to go to trial. Before trial, Reperex asked for a jury instruction addressing fraudulent nondisclosure—a theory of relief that requires a showing of the existence of a duty of disclosure. The district court declined to give the instruction on the basis of its determination (as to negligent misrepresentation) that Bradshaw did not owe Reperex a duty. And the jury subsequently ruled in Bradshaw's favor on the fraud claim.

¶14 Reperex appealed the dismissal of its claims against Coldwell. It also appealed the dismissal of its claims against Bradshaw and the denial of the request for a jury instruction on fraudulent nondisclosure.

¶15 The court of appeals affirmed as to the claims against Bradshaw but reversed as to the claims against Coldwell. As to Bradshaw, the court of appeals agreed with the district court that no privity had been established and that there was no writing sufficient to establish the writing exception. It also affirmed the district court's refusal to give a jury instruction on fraudulent nondisclosure.

¶16 On the claims against Coldwell, the court of appeals concluded that the nonreliance clause did not preclude Reperex's claims for fraud and negligent misrepresentation. It first identified circumstances in which a contract provision of this sort could be unenforceable on public policy grounds—as where a contract is procured by fraud in the inducement, or purports to insulate "a person against his own fraud." *Reperex Inc. v. Child, Van Wagoner & Bradshaw*, 2017 UT App 25, ¶ 22, 392 P.3d 905 (citing *Miller v. Celebration Mining Co.*, 2001 UT 64, ¶ 10, 29 P.3d 1231; *Lamb v. Bangart*, 525 P.2d 602, 608 (Utah 1974)). And it held that Reperex had asserted claims for relief that "could reasonably support a finding" in its favor on these grounds. *Id.*, ¶ 28.

¶17 The court of appeals also reversed the district court's summary dismissal of the fiduciary duty claim. It held that the details surrounding Coldwell's actions were not so complex that expert testimony was needed in order to establish a breach of fiduciary duty. It stated that "the complexity of the claim, not the complexity of the transaction, determines whether expert testimony is required." *Id.*, ¶ 50. And it concluded that the fact pattern at issue presented a simple enough case of nondisclosure and materiality that experts were not needed.

¶18 Coldwell filed a petition for certiorari and Reperex filed a cross-petition. We granted both petitions.

II

¶19 Coldwell challenges the court of appeals's decisions (a) reversing the district court's dismissal of Reperex's fraud and negligent misrepresentation claims under a "nonreliance" provision of the parties' contract, and (b) reversing the dismissal of Reperex's fiduciary duty claims on the basis of Reperex's failure to designate an expert witness. Reperex, for its part, contends that the court of appeals erred (a) in affirming the dismissal of Reperex's claims against Bradshaw under the terms of Utah Code section 58-26a-602, and (b) in affirming the district court's decision refusing to give a jury instruction on fraudulent nondisclosure. We consider each argument in turn.

A. The Enforceability and Applicability of the Nonreliance Provision

¶20 Coldwell first challenges the court of appeals's decision reversing the dismissal of Reperex's fraud and negligent misrepresentation claims on a motion for judgment on the pleadings. Our review of this decision is *de novo*. *DIRECTV v. Utah State Tax Comm'n*, 2015 UT 93, ¶ 11, 364 P.3d 1036 ("In reviewing a decision on a motion for judgment on the pleadings, we yield no deference to the district court's analysis.").

¶21 Coldwell's motion for judgment on the pleadings was based on a "nonreliance" provision in a contract entered into between Reperex and Coldwell. The provision in question states as follows:

> Buyer hereby acknowledges that Buyer is relying on its own inspection of the involved business and the representations of the Seller and not of COLDWELL BANKER COMMERCIAL and/or any of its agents or employees with regards to the prior operating history of the business, the value of the assets being purchased

and all other material facts of Seller in completing the transaction as evidenced by the Agreement for Purchase and Sale together with its attachments. Buyer further acknowledges that neither COLDWELL BANKER COMMERCIAL nor any of its agents and/or employees have verified the representations of the Seller, and should any representations be untrue, Buyer agrees to look solely to Seller for relief and to indemnify COLDWELL BANKER COMMERCIAL, its agents and employees and hold them harmless in connection with all losses and damages caused to Buyer thereby.

(Emphasis added.)

¶22 The district court dismissed Reperex's claims under this provision. It held that the provision was enforceable and sufficient to foreclose Reperex's claims. The court of appeals reversed. It reinstated Reperex's claims on the ground that Reperex had pleaded facts that, "if proven, could reasonably support a finding that the non-reliance provision" would be unenforceable on public policy grounds. 2017 UT 25, ¶ 28.

¶23 Coldwell challenges that decision on certiorari. It complains that the court of appeals misread the terms of the nonreliance provision. And it claims that the provision, when properly construed, is both enforceable and sufficient to insulate Coldwell from liability to Reperex.

¶24 We agree with Coldwell's threshold point. We think the nonreliance clause is narrower than the court of appeals allowed. And we deem this provision enforceable to the extent it applies. We nonetheless affirm the judgment of the court of appeals—its reversal of the district court's judgment on the pleadings—because we find that Reperex has stated claims that are not covered by the terms of the nonreliance provision.

¶25 The provision in question disclaims any reliance of Reperex on Coldwell for "the representations of the Seller." For such representations the contract clarifies that Coldwell has not performed any verification. And it establishes that Reperex agrees to "look solely to the Seller for relief" and must hold Coldwell "harmless."

¶26 Reperex has identified no basis in our case law for striking down this nonreliance provision on public policy grounds. Our cases have established that a party may not insulate itself from liability for

its "own fraud" in a provision of a contract. *See Lamb*, 525 P.2d at 608. But this contract provision does not purport to do that. It simply clarifies the parties' roles in this contractual relationship—with Coldwell acting only as a conduit for representations from the seller, and the buyer agreeing to look only to the seller as to the accuracy of any of those representations. And we see nothing in our case law, or in the arguments advanced by Reperex, for a decision striking down this sort of clause on public policy grounds.

¶27 Reperex's principal argument is its (understandable) concern about the effects of a contractual license for a party to engage in fraud "with absolute impunity." But the nonreliance provision at issue does not provide such a license. Again, it simply defines the roles of parties to the contract—by clarifying that Coldwell is not expected to "verif[y]" the accuracy of information it receives from the seller, and by stating that Reperex will look only to the seller if the information that Coldwell passes along is "untrue."

¶28 We hold that this provision is enforceable as far as it goes. We find no basis in the public policy or law of the State of Utah that would foreclose the parties from limiting Coldwell's role in this transaction, or from limiting Reperex's recourse to the seller in the event that Coldwell happens to pass along false information it receives from the seller.

¶29 We also clarify, however, that this is not enough to sustain the dismissal of Reperex's fraud and negligent misrepresentation claims. Reperex appears to have accused Coldwell of more than just acting as a conduit for the seller's representations. It seems to be alleging that Coldwell committed its *own fraud*—by strategically curating information given to it by the seller (intentionally passing along only select information that would be misleading if viewed in isolation), with the goal of inflating the value of the business and inducing the buyer to close the purchase.[2] That sort of conduct is not

---

[2] Reperex seems to have pleaded and argued in support of this sort of claim in the proceedings below and briefing in our court. In its Opposition to the Motion for Judgment on the Pleadings, for example, Reperex asserted that "Bush, [Coldwell] and the Seller all purposely withheld information they knew would show the falsity of their representations during the entire due diligence of the [ ] company by [Reperex]." And in its brief to our court, Reperex claimed that Coldwell "*concealed* and filtered from [Reperex]

covered by the nonreliance provision. The provision, as noted, simply disclaims any reliance of Reperex on Coldwell for "the representations of the Seller" and clarifies that Reperex must "look solely to the Seller for relief." But this does not speak to Coldwell's liability for its own fraud. And we accordingly hold that Reperex can state a claim against Coldwell for any acts of strategically curating false information in what it passed along to Reperex.

¶30 We leave another issue open on remand: whether Coldwell made a fraudulent representation in the contract itself when it represented to Reperex that it had not "verified the representations of the Seller." Reperex raises that possibility in response to Coldwell's motion for judgment on the pleadings, and again before both the court of appeals and this court. The court of appeals appeared to agree with Reperex. It noted in passing that Reperex could prove that the nonreliance clause was "procured by fraud" on remand.

¶31 We affirm that holding. Our cases establish that a "release will be voidable if it was an integral part of a scheme to defraud," *Ong Int'l (USA) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 453 (Utah 1993), or in other words that a contract may be rendered unenforceable by proof of reliance on fraud in the inducement, *see Miller v. Celebration Mining Co.*, 2001 UT 64, ¶ 10, 29 P.3d 1231. Reperex did not plead such a claim, but it did raise the argument when Coldwell disclaimed liability under the nonreliance clause. We do not determine whether Reperex's claim is properly raised or what the

---

essential company data that . . . [May's] gave to Coldwell. They knowingly filtered out data which would have shown [Reperex] that the data Coldwell gave to [Reperex] was false, and that Coldwell knew it was false." (Emphasis in original.) These allegations would appear to escape the terms of the parties' contract. To the extent these allegations establish a ground for concluding that Coldwell engaged in its own fraud, and was not just a conduit for information provided to it by the seller, Reperex may have stated a claim that can survive the motion for judgment on the pleadings.

Unfortunately Reperex does not make clear which of its allegations against Coldwell arise out of independent misrepresentations, and which are based on representations that were made by the seller and passed along by Coldwell. We leave any necessary clarification of this point to the court and the parties on remand.

effect of its argument would be. We leave those questions for the court on remand. But we do hold that Reperex has done enough to survive Coldwell's attempt to repudiate this theory of relief on its motion for judgment on the pleadings.

¶32 We uphold Reperex's right to assert that Coldwell engaged in its own fraud in strategically curating the information that it passed along to Reperex. And we affirm the reversal of the judgment on the pleadings because we conclude that Reperex has pleaded a claim for relief that escapes the terms of the parties' nonreliance clause. We also leave open the question of whether Coldwell made a misrepresentation in the contract, and whether such a misrepresentation might sustain a finding of fraud in the inducement sufficient to render the nonreliance clause unenforceable.

## B. The Need for Expert Testimony on Reperex's Fiduciary Duty Claim

¶33 Coldwell also challenges the court of appeals' decision reversing the dismissal of Reperex's fiduciary duty claim. This claim was dismissed on summary judgment. And our review again is *de novo*. *See Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56.

¶34 Coldwell moved for summary judgment on the ground that expert testimony was necessary to establish the elements of its breach of fiduciary duty claim, including the applicable standard of care and whether it was breached.[3] In granting this motion the district court first concluded that Coldwell owed Reperex a fiduciary duty. Then it concluded that Reperex's claim for breach of such a duty could not survive without expert testimony—testimony necessary "to assist a jury in determining whether [Coldwell's] conduct satisfied the applicable standard" of care.

¶35 The court of appeals reversed. It accepted the existence of a fiduciary duty—a point not appealed by Coldwell. *See Reperex*, 2017 UT App 25, ¶¶ 35–36. And it endorsed the notion that a business broker owes a duty that "is not lower than the standard of care for

---

[3] In its initial motion for summary judgment Coldwell also asserted that the breach of fiduciary duty claim was foreclosed by the nonreliance clause in the contract. But the parties have not briefed that question and it is accordingly not presented for our decision.

real estate brokers"—a duty that would require the business broker to "deal fairly and honestly; be honest, ethical, and competent; and not misrepresent, either affirmatively or by omission, their client's financial condition or ability to perform." *Id.* ¶ 40 (citing *Hermansen v. Tasulis*, 2002 UT 52, ¶¶ 20, 22, 48 P.3d 235; *Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App 361, ¶ 24, 246 P.3d 131). The court of appeals reversed the decision of the district court, however, on the ground that the claim of breach in this case was a matter "'within the common knowledge and experience' of the jury," and thus did not require expert testimony. *Id.* ¶ 50.

¶36 We affirm the court of appeals on this latter point. And we do so without reaching the threshold question of the precise nature and extent of a business broker's fiduciary duty to a buyer. Instead we simply conclude, as did the court of appeals, that Reperex's claims of breach are not sufficiently complex or esoteric to require expert testimony. And we therefore affirm the reversal of the decision dismissing Reperex's fiduciary duty claim on summary judgment.

¶37 The threshold question of the applicable standard of care of a business broker is an important one. Yet it is not resolved in our case law. And the parties' briefs provide no clear basis for a comprehensive statement of the governing standard of care. We are unpersuaded, without more, of the basis for assuming that a business broker has the same duty as a real estate broker. The two roles obviously differ in some respects. And we deem it unwise to simply assume that the business broker bears the same duty as a real estate broker.

¶38 We could remedy this deficiency by ordering supplemental briefing. But we see no need to do so here because we find no basis for any reasonable ground for a difference of opinion on the core duty at issue here—the duty not to misrepresent material information to a buyer. Surely a business broker should be held at least to that standard; no party has identified any basis for a contrary conclusion. So we accept that duty for the purpose of deciding this case, while leaving for another day the question of the full extent of the standard of care owed by a business broker.

¶39 That leads to the core basis for Coldwell's motion for summary judgment—the assertion that Reperex's claim for breach of fiduciary duty required expert testimony. The need for expert testimony is a matter sensitive to context. "[T]he question of the need for expert testimony turns on the nature of the standard to be

addressed by the jury." *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 59, 417 P.3d 95. Thus:

> Fiduciary duties may sometimes, but will not always, implicate the type of technical matters that would lie beyond the capacity of an ordinary juror. This means that expert testimony will be required in the breach of fiduciary duty context to explain standard of care and breach issues where the average person has little understanding of the duties owed by particular trades or professions. *This testimony may be unnecessary, however, if the professional task is so common or the alleged breach is so egregious that specialized knowledge is not required to conclude that the conduct fell below the applicable standard of care,* whatever that standard might be. Accordingly, the question of whether expert testimony is required will necessarily occur on a case by case basis
> . . . .

*Id.* ¶ 60 (emphasis added). The case-by-case analysis of commonness or egregiousness is ultimately a judgment call. And there will be hard cases on the margins. But this is not such a case.

¶40 The materiality analysis in this case is straightforward. Reperex alleges that Coldwell represented that the seller had earned $310,000 in cash sales in one year when the correct figure was $74,000. By this account the seller's actual income was about four times less than advertised. That is an egregious disparity. And we think the materiality of such a disparity is a matter within the common understanding of a lay person, not a matter of expertise requiring technical knowledge.

¶41 The same goes for Reperex's allegations that Coldwell failed to disclose the bankruptcy of a major customer (one accounting for about 40 percent of the ongoing sales income of the business) and represented that a necessary business license could be obtained in three months, when the actual duration was three years. We conclude that a lay person could find that these alleged misrepresentations are material without the need for technical input from an expert. And we affirm the court of appeals' decision reversing summary judgment on this basis.

¶42 Reperex also asserts that Coldwell told Reperex that there was no commingling of funds between May's and a sister company, after Bradshaw had told Coldwell that "there was a lot of intercompany commingling." This is not as obviously material as the

other facts alleged. But we are persuaded that no expert testimony was required to establish this claim (though it might have been advisable to use one). Reperex specifically asked whether there had been intercompany mingling—which is evidence that that question was material to its decision. And a lay juror is capable of inferring that commingling of finances between two businesses has the potential to significantly alter an evaluation of that business.

¶43 Coldwell urges us to reverse the court of appeals under the theory that the issues here are "too complex for the average juror" to understand without expert testimony. In its briefing and at oral argument, Coldwell argued in general terms that this transaction was highly complex. It pointed to the "hundreds of pages of financial records" provided to Reperex, and the fact that "[s]killed professionals were required in order to find a buyer, negotiate the terms of the sale, and close the transaction." We don't doubt that this transaction contained elements that were beyond the understanding of a lay juror. But where Reperex has alleged misrepresentations that are clearly material, Coldwell needs to do more than gesture vaguely at the complexity of the transaction to prove otherwise.

¶44 If Coldwell had shown that the discrepancies in its representations were due to the application of two contrary but accepted principles of accounting, perhaps it could have rebutted Reperex's assertions and demonstrated that experts were needed. But there are no such arguments in its brief. And when pressed at oral argument, Coldwell fell back only on unspecified complexities.

¶45 The alleged misrepresentations identified by Reperex thus appear to be simple and straightforward. And Coldwell fails to identify any relevant point of expertise that would have been needed to allow a lay jury to unravel them. We thus affirm the court of appeals' determination that no expert was needed to sustain Reperex's breach of fiduciary duty claim.

C. Dismissal of Reperex's Claims Under Utah Code Section 58-26-602

¶46 Reperex challenges the court of appeals' decision upholding the dismissal of Reperex's claims under Utah Code section 58-26a-602. The district court dismissed Reperex's claims on Bradshaw's motion for summary judgment. The court of appeals affirmed. Our review is *de novo. See Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56.

¶47 Utah Code section 58-26a-602 states a general rule that CPAs are liable only to those with whom they are in "privity of contract." It also prescribes two exceptions to that general rule. *Id.* § 58-26a-602(1)&(2). Reperex asserts that it was both in privity with

Bradshaw and that it qualifies for the two statutory exceptions. We disagree and affirm.

### 1. Privity

¶48   Reperex is not a party to a contract with Bradshaw. The only contract at issue is one entered into between Bradshaw and May's. This is fatal to Reperex's claim to "privity of contract." A person is in privity with another when the two are parties to the same contract. *See* Privity, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "privity of contract" as "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so").

¶49   Reperex nonetheless claims privity on the basis of its alleged status as a third-party beneficiary of the contract between Bradshaw and May's. This is a plausible argument. Some courts have treated third-party beneficiary status as a basis for establishing privity. *See* 13 WILLISTON ON CONTRACTS § 37:1, 1 & n.13 (4th ed. 2018). We reject that position, however, in light of the contrary view—of third-party beneficiary status as an *exception* to the requirement of privity. *See id.* (noting that "[d]epending on the particular jurisdiction, the third party beneficiary doctrine either dispenses with the need for privity or asserts that privity, by virtue of the party's status as a third party beneficiary, in fact exists"). This latter view seems best to comport with the way the term privity has been used in Utah. *See Walker Bank & Tr. Co. v. First Sec. Corp.*, 341 P.2d 944, 946 (Utah 1959) (noting that a party can be liable to a beneficiary who was harmed by its actions "despite [the] lack of privity between them"); *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980) (distinguishing third-party beneficiaries from the parties to a contract).

¶50   We accordingly hold that a third-party beneficiary is not a party with privity under Utah Code section 58-26a-602. It is a third party that sometimes qualifies for an exception to the general rule that only parties in privity have a right to sue for breach of contract.

¶51   Utah Code section 58-26a-602 does not recognize such an exception. The statutory exceptions (discussed below) are different. We do not "infer substantive terms into the text that are not already there." *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994). So the lack of a third-party beneficiary exception in the statute is fatal to Reperex's first argument.

2. The Writing Exception

¶52 Section 58-26a-602(2) makes an exception to the general requirement of privity for:

> [O]ther acts, omissions, decisions, or conduct, if the person performing the professional services: (a) knew that a primary intent of the client was for the professional services to benefit or influence the particular person seeking to establish liability; and (b) identified in writing to the client that the professional services performed on behalf of the client were intended to be relied upon by the particular person seeking to establish liability.

UTAH CODE § 58-26a-602. The parties have referred to this as the "writing exception." The court of appeals found that Reperex had failed to establish the applicability of this exception. It considered a series of emails between Bradshaw and Coldwell but concluded that Reperex had failed to show that any of them ever "mention[ed]" Reperex or indicated an intent that Reperex "rely on" Bradshaw's accounting services. *Reperex Inc. v. Child, Van Wagoner & Bradshaw*, 2017 UT App 25, ¶¶ 61-62, 392 P.3d 905. The court of appeals also analyzed "financial documents" that Bradshaw had provided for Reperex's consideration at a "due diligence meeting." *Id.* ¶ 63. But it again concluded that these documents failed to "mention[]" Reperex. *Id.* And it held that "the writing exception" failed on that basis. *Id.* ¶ 63.

¶53 We agree with the court of appeals' bottom-line conclusion and affirm its determination that Reperex failed to establish a basis for the writing exception. But we see a more fundamental, threshold problem with Reperex's argument. And we affirm on the basis of this problem.

¶54 The writing exception speaks not only to the contents of the requisite writing but also to its author and recipient. Thus, the statute requires more than just an accountant's knowledge "that a primary intent of the client was for the professional services to benefit or influence the particular person seeking to establish liability" and more than just a writing indicating "that the professional services performed on behalf of the client were intended to be relied upon by the particular person seeking to establish liability." UTAH CODE § 58-26a-602(2). The statute also specifies that the writing must be *from* "the person performing the professional

services . . . *to* the client." *Id.* Reperex has identified no such documents. That alone is fatal to Reperex's argument.

¶55  Reperex points to emails between Bradshaw and Coldwell. These emails were not sent to the client, May's,[4] and they thus fail the threshold requirement of Utah Code section 58-26a-602(2)(b). The emails, moreover, were sent with another purchaser in mind—and months before Reperex came into the picture. So they cannot possibly establish that they are meant to be relied on by Reperex, the "particular person seeking to establish liability" here. UTAH CODE § 58-26a-602(2)(b).

¶56  Reperex claims that it should somehow be able to piggyback on these documents because Bradshaw was asked to provide "similar documents" and services to Reperex as it did to the prior prospect. But the plain language of section 58-26a-602(2)(b) precludes this theory. The emails fail to support the writing exception.

¶57 Reperex also points to financial documents provided by Bradshaw for review at the "due diligence meeting." It insists that these documents "strongly served as a loud statement" that Bradshaw understood that Reperex would rely on Bradshaw's work product. But the writing exception is not triggered by loud statements; it is triggered by writings from an accountant to a client. So any document provided by Bradshaw to Reperex cannot sustain the writing exception. Because Reperex points only to the emails and the documents Bradshaw gave to it, its claim to the writing exception fails.

¶58  Reperex cites *Reynolds v. Bickel*, 2013 UT 32, 307 P.3d 570, in support of its contrary conclusion. It says that *Reynolds* allows the writing exception to be sustained on the basis of a "nexus" among a range of writings. And it insists that there is a "nexus" among

---

[4] Bradshaw states in passing in its briefing that the client "would have been May's." The court of appeals apparently agreed. *Reperex*, 2017 UT App 25, ¶ 61 ("Here, [Bradshaw] did not identify in one or a series of writings to the Seller [May's] that anyone intended [Reperex] to rely on his services."). Because Reperex makes no argument to the contrary, we assume that May's was the client, and that the relevant writing had to be from Bradshaw to May's. Reperex has pointed us to no such document.

documents here that "all together show that [Reperex] expected to rely on Bradshaw for his attestation services at the due diligence meeting[] and that Bradshaw knew that this was a due diligence meeting for which [Reperex] would rely on as a due diligence meeting."

¶59  We find no support for Reperex's position in *Reynolds*. That case involved twenty-five emails and eleven spreadsheets that passed between the accountant and the client. *Reynolds*, 2013 UT 32, ¶ 13. And "each spreadsheet mentioned Mr. Reynolds by name five times." *Id*. This was the core basis for our holding in *Reynolds*. We held that the writing requirement was satisfied when the writings were "considered together as a memorandum . . . [because] there [was] a nexus between them." *Id.* ¶ 17 (citing *Machan Hampshire Props., Inc. v. W. Real Estate & Dev. Co.*, 779 P.2d 230, 234 (Utah Ct. App. 1989).

¶60  The problem in *Reynolds* was only that there was "no single writing" that "explicitly" set forth the accountant's intent that a third party rely on the accountant's work product. *Id*. ¶ 15. In endorsing the applicability of the writing exception in that case we did not dispense with the requirement of a writing from the accountant to the client. We explained only that "one or more writings, *not all of which are authored by*" the accountant "may be considered together as a memorandum if there is a nexus between them." *Id*. ¶ 17 (emphasis added).

¶61  By statute, the writing exception clearly requires at least some writing by the accountant to the client. No such writing is identified by Reperex here. We affirm the court of appeals on that basis.

### 3. The Fraud Exception

¶62  Section 58-26a-602(1) provides another exception to the general requirement of privity. This provision states that a CPA may be liable (despite a lack of privity) for "acts, omissions, decisions, or conduct that constitute fraud or intentional misrepresentations." UTAH CODE § 58-26a-602(1).

¶63  The viability of this exception was not litigated below—not in the district court and not in the court of appeals. That is because Bradshaw never invoked the statutory protection of Utah Code section 58-26a-602(1) with regard to Reperex's claims for fraud. And that alone is a sufficient ground for us to avoid this issue on appeal.

¶64  Bradshaw has asked us to conclude that Reperex cannot invoke the fraud exception for its claim for nondisclosure fraud. It

asserts that nondisclosure fraud does not fit within the terms of the statute. We are dubious of that argument. The exception, after all, encompasses all "acts, *omissions*, decisions, or conduct that constitute fraud." UTAH CODE § 58-26a-602(1). And nondisclosure is a theory of fraud arising from omissions in the face of a duty of disclosure. *See* Part II.D below. For that reason it would appear that Reperex has a basis for asserting its claim for nondisclosure fraud under the terms of the statute (assuming it has a basis for such a claim—an issue we take up below).

¶65  We need not resolve this issue, however, because Bradshaw failed to invoke the protections of section 58-26A-602(1) in the proceedings below. This statute sets forth a defense that was Bradshaw's burden to raise. And we decline to address a defense that was neither advanced by the defendant nor decided by the court whose decision we are reviewing.

### D. Refusal to Give Nondisclosure Fraud Instruction

¶66  Reperex also challenges the decision affirming the denial of its request for a jury instruction on fraudulent nondisclosure. Nondisclosure can amount to fraud only in the face of a duty to disclose. *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 10, 143 P.3d 283. And the district court declined to give an instruction on nondisclosure fraud on the basis of a lack of a duty of disclosure on Bradshaw's part—a decision that the district court said it had already made in dismissing Reperex's claim for negligent misrepresentation.

¶67 The court of appeals affirmed the district court's determination that no such duty existed. It did so on the ground that the legislature "ha[d] occupied the field" by "craft[ing] a statute adopting the general rule that accountants owe no duty to those with whom they are not in privity and defining with considerable precision the exceptions to that general rule." *Reperex*, 2017 UT App 25, ¶ 71. Because the statute does not prescribe a duty of disclosure for accountants to parties not in privity with them the court of appeals concluded that the legislature must have meant to foreclose any such duty. And it affirmed the district court's refusal to give the nondisclosure fraud jury instruction on this basis.

¶68  We disagree with the premise of court of appeals' decision. We do not read section 58-26a-602(1) to "occup[y] the field" in a manner preempting the possibility of a common law duty of disclosure. We read the statute to incorporate the common law of

fraud—and to import any duties arising out of the common law into the statute.

¶69 The statute speaks of "acts, omissions, decisions, or conduct that constitute fraud or intentional misrepresentations." UTAH CODE § 58-26a-602(1). Fraud is not defined in the act. So we interpret the statutory reference to "acts, omissions, decisions, or conduct that constitute fraud" as an incorporation of the common law on these issues. *See Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 ("When the legislature 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.'" (quoting *Morissette v. United States*, 342 U.S. 246, 263(1952)).

¶70 That conclusion opens the door to the possibility that Bradshaw owed a duty of disclosure to Reperex. Whether such a duty attaches in these circumstances is a question for the common law of fraud.

¶71 That question is a legal one. *Yazd*, 2006 UT 47, ¶ 13. It depends on the "structure and dynamics of the relationship between the parties." *Id.* ¶ 15. At times the duty analysis is straightforward. Certain relationships categorically give rise to duties of disclosure. But in other cases the relevant "relationship" is defined by the nature of the interaction between the parties, rather than an identifiable legal relationship.[5] In such cases, the duty analysis is fact-intensive.

¶72 The record before us does not paint a clear picture of the relationship between Reperex and Bradshaw. We know that the parties were not in privity. But it is possible that the details of the transaction between the parties could give rise to a duty of disclosure for Bradshaw. That question would turn on some underlying questions of fact. To determine whether this is a relationship sustaining a duty we would need to know precisely what services Bradshaw performed, the content of all the

---

[5] This court has previously stated that the existence of a duty depends on a "multitude of life circumstances." *Yazd*, 2006 UT 47, ¶ 16. This fuzzy standard does not provide much (if any) predictability to the parties or transparency for the court. We welcome briefing in future cases about how this standard might be clarified in a manner that would make it more workable.

communications between the parties, and the extent to which Reperex relied on Bradshaw to provide the information it needed.

¶73  In the briefs filed in this court Reperex and Bradshaw offer very different versions of the events in question. For that reason we are not in a position to resolve the duty question on the briefing and the record before us. We therefore remand this issue to the court of appeals with the instruction to either make a legal determination of duty on the facts before it, or to reverse and remand to the district court, where the facts giving rise to a duty could be established.

### III

¶74  On Coldwell's petition, we qualify the court of appeals's holding on the nonreliance clause in this case: Coldwell is liable for any independent fraudulent representations but is immune from liability for any actions it took as a pure conduit of information from May's, regardless of whether it knew that the information was accurate. We remand for proceedings consistent with this standard. And we affirm the court of appeals as to the expert testimony issue.

¶75  On Reperex's cross-petition, we affirm the court of appeals on the issues of privity and the writing exception. But we disagree with the premise of its decision as to the nondisclosure fraud claim and remand for a determination of whether a Bradshaw owed a duty to disclose.