**2025 UT App 141**

# THE UTAH COURT OF APPEALS

ROXANNE DUENNEBEIL, PETER DUENNEBEIL, JAMES WHEELER, JOHN SYLVESTER, PATRICK HASLAM, SUSAN HASLAM, MICHAL KARPINSKI, KENT BOOTH, ANN HALLADAY, GARY WAGGONER, MICHAEL MOLACEK, DOROTHY YEUNG, AND ARLENE WALKER,
*Appellees and Cross-appellants,*

*v.*

PARAMOUNT FINANCIAL SERVICES, INC. DBA LIVE ABUNDANT, DOUGLAS R. ANDREW, AARON ANDREW, KARL NELSON, JEREMY WATSON, AND MARCUS MAXFIELD,
*Appellants and Cross-appellees.*

Opinion
No. 20230756-CA
Filed September 25, 2025

Third District Court, Salt Lake Department
The Honorable Coral Sanchez
The Honorable Su Chon
No. 180903806

Brennan H. Moss and Casey E. Waughn,
Attorneys for Appellants and Cross-appellees

D. Craig Parry, Chaunceton Bird, Sarah Childs,
Claire McGuire, and Mark O. Van Wagoner,
Attorneys for Appellees and Cross-appellants

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Roxanne Duennebeil, Peter Duennebeil, James Wheeler, John Sylvester, Patrick Haslam, Susan Haslam, Michal Karpinski, Kent Booth, Ann Halladay, Gary Waggoner, Michael Molacek, Dorothy Yeung, and Arlene Walker (collectively, Investors) sued

Paramount Financial Services, Inc.—a company selling life insurance products under the business name Live Abundant—as well as the company's founder—Douglas R. Andrew—and certain licensed insurance agents that sold insurance products for the company—Aaron Andrew, Karl Nelson, Jeremy Watson, and Marcus Maxfield (collectively, the Live Abundant Parties). Investors sought to hold the Live Abundant Parties liable for introducing and recommending a real estate investment product that ultimately failed and caused Investors to lose significant funds. After a trial, a jury found in favor of Investors on several of their claims. On appeal, the Live Abundant Parties argue that the trial court should have granted judgment as a matter of law in their favor on Investors' claims because Investors failed to provide expert testimony as to the relevant standard of care. We agree and therefore reverse the decision of the court, vacate the jury's verdict, and direct the entry of judgment in favor of the Live Abundant Parties.

BACKGROUND

¶2     The Live Abundant Parties were primarily engaged in the business of selling life insurance products. However, they also participated in the sale of certain non-insurance investment products in conjunction with their sale of insurance products. One such product was a real estate investment offered by the Woodbridge Group of Companies (the Woodbridge Product). The Live Abundant Parties introduced Investors to the Woodbridge Product, representing it as a sound investment. Investors made significant investments in the Woodbridge Product, with the understanding that they would begin earning monthly distributions as a result of their investments. While Investors did initially receive monthly distributions, at some point those distributions started dropping off, and shortly after that, Woodbridge declared bankruptcy. It eventually came to light that

Woodbridge was a large-scale Ponzi scheme that used "only new investor funds as the source of existing investors' returns."

¶3    Investors thereafter filed this lawsuit against the Live Abundant Parties, asserting claims of breach of fiduciary duty, negligence, negligent misrepresentation, and unjust enrichment. Investors argued that the Live Abundant Parties "knew, or in the exercise of reasonable care should have known, that [the Woodbridge Product was] inappropriate and inadvisable for [Investors]" and that the Woodbridge Product was "not in fact backed by a dollar-for-dollar investment in real property" as the Live Abundant Parties had represented. Investors thus argued that "[b]y failing to adequately investigate and understand the risks associated with [the Woodbridge Product] and failing to inform [Investors] of the same" (and instead representing that the investments were "safe" and "secure"), the Live Abundant Parties violated fiduciary duties and acted negligently, resulting in Investors "suffer[ing] dramatic losses to their retirement savings."

¶4    The case proceeded to a jury trial. In their case in chief, Investors presented testimony from several individual investors as well as from certain other individuals affiliated with Live Abundant. At the close of Investors' evidence, the Live Abundant Parties moved for judgment as a matter of law pursuant to rule 50(a) of the Utah Rules of Civil Procedure. They argued that Investors' breach of fiduciary duty, negligence, and negligent misrepresentation claims each failed because Investors had not "established the requisite standard of care that governs these claims." Specifically, the Live Abundant Parties argued that because "[i]nvestment suitability and adequacy of due diligence in complex real estate transactions are not matters within the common knowledge of an ordinary juror," Investors were required to provide expert testimony as to the applicable standard of care.

¶5    The trial court denied the motion. The court explained that because the Live Abundant Parties "were not acting within their duties as . . . life insurance agents" but "were doing something that was outside of that," the court did not "know what the industry standard could be or . . . who the appropriate person would be for an expert." The court concluded, "[T]he jurors can, on their own common knowledge and common sense, decide this case as to whether or not [the Live Abundant Parties] breached their duties in presenting these investment opportunities that were unregulated."

¶6    The jury ultimately found none of the Live Abundant Parties liable on the breach of fiduciary duty claim. But the jury did find several of the Live Abundant Parties liable for negligence and several of them liable for negligent misrepresentation. The jury also determined that each of the Live Abundant Parties was unjustly enriched.

¶7    The Live Abundant Parties thereafter submitted a renewed motion for judgment as a matter of law under rule 50(b) of the Utah Rules of Civil Procedure, again arguing that Investors were required to provide expert testimony as to the standard of care and that their failure to do so was "fatal to [their] case." After a hearing, the court denied the renewed motion, again determining that expert testimony was not required under the circumstances of this case.[1] The Live Abundant Parties thereafter timely appealed.

## ISSUE AND STANDARD OF REVIEW

¶8    The Live Abundant Parties argue that the trial court erred in denying their motions for judgment as a matter of law and in

---

1. Judge Chon presided over the trial and denied the first motion for judgment as a matter of law, and subsequently Judge Sanchez denied the renewed posttrial motion.

determining that Investors did not need to present expert testimony to establish the standard of care for their claims. "We review a denial of a motion for judgment as a matter of law for correctness." *UMIA Ins. v. Saltz*, 2022 UT 21, ¶ 26, 515 P.3d 406 (quotation simplified). Likewise, "[w]hether expert testimony is required to establish the applicable standard of care in a particular case presents a question of law, which we review for correctness." *Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶ 39, 513 P.3d 729.[2]

## ANALYSIS

¶9     "In order to prevail under [a negligence or a negligent misrepresentation claim], a plaintiff must demonstrate the existence of a duty running between the parties." *Smith v. Frandsen*, 2004 UT 55, ¶ 9, 94 P.3d 919. "In a negligence claim, a plaintiff must show a duty of reasonable care owed by the defendant to the plaintiff." *Gables at Sterling Village Homeowners Ass'n v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 56, 417 P.3d 95 (quotation simplified). And "under negligent misrepresentation, the duty is to exercise reasonable care or competence in determining the information to be supplied to others for guidance in business transactions."[3] *Rawson v. Conover*, 2001 UT 24, ¶ 31, 20 P.3d 876.

---

2. The Live Abundant Parties raise two other claims on appeal, and Investors raise two claims on cross-appeal. But because our resolution of the first issue on appeal is dispositive, we need not address any of these additional issues.

3. The Live Abundant Parties did not squarely address Investors' unjust enrichment claim in either of their motions for judgment as a matter of law, but they did tacitly suggest that establishing a standard of care through expert testimony was crucial to the

(continued…)

¶10 "To determine the relevant standard of care in negligence cases, the essential question is the care that a reasonable person would undertake in the defendant's circumstances." *Gables at Sterling Village*, 2018 UT 04, ¶ 57 (quotation simplified). "[I]n a typical negligence case we ask a jury of reasonable people to draw upon their collective expertise to conclude how a reasonable person would have acted in that circumstance." *Id.* But when the standard of care implicates matters "that would lie beyond the capacity of an ordinary juror," a plaintiff generally must provide

---

viability of Investors' case overall. And this seems in line with the stipulated jury instructions, which explained the dependent nature of Investors' unjust enrichment claim:

> [Investors] contend that each of [the Live Abundant Parties] breached a fiduciary duty . . . by failing to conduct due diligence into [the Woodbridge Product] . . . . They further claim that each [of the Live Abundant Parties] failed to exercise reasonable care in connection with [the Woodbridge Product] by failing to properly understand and investigate the risks of [the Woodbridge Product]. They also claim that each of [the Live Abundant Parties] made misrepresentations and omissions about [the Woodbridge Product] . . . , including that the real estate investments were safe and secure and that they were backed by an interest in real property. Finally, each of [Investors] asserts that it would be unjust for [the Live Abundant Parties] to retain the commissions they earned from selling [the Woodbridge Product] *in these circumstances*.

(Emphasis added.) Thus, we agree that Investors' failure to present a standard of care to prove the asserted claims is ultimately fatal to their unjust enrichment clam as well. Proving unjust enrichment would have required Investors to demonstrate wrongful conduct or a breach of duty for the Live Abundant Parties' financial gains.

expert testimony to assist the jury. *Id.* ¶ 60. "This testimony may be unnecessary, however, if the professional task is so common or the alleged breach is so egregious that specialized knowledge is not required to conclude that the conduct fell below the applicable standard of care, whatever that standard might be." *Id.*; *see also Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶¶ 87–91, 513 P.3d 729 (concluding that expert testimony "was unnecessary" on a claim that a car dealership was negligent in selling a car covered by "a mandatory stop-sale order" that prohibited the sale of recalled vehicles until a fuel line was replaced); *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980) (stating that "[t]he loss of a surgical instrument or other paraphernalia[] in the operating site" is a situation in which "the propriety of the treatment received is within the common knowledge and experience of the lay[person]"); *Nguyen v. IHC Health Services, Inc.*, 2010 UT App 85, ¶ 18, 232 P.3d 529 (holding that an expert was not needed to establish that a patient put on a ventilator "should have been informed that the ventilator was in the hospital on a trial basis for experimental purposes; that it was still under evaluation; that it was actually intended for 'life flight' transport; and, most importantly, that the ventilator had not once been used on a patient"). "Accordingly, the question of whether expert testimony is required will necessarily occur on a case by case basis . . . ." *Gables at Sterling Village*, 2018 UT 04, ¶ 60.

¶11 Both the Live Abundant Parties and Investors consider this court's decision in *White v. Jeppson*, 2014 UT App 90, 325 P.3d 888, instructive here. In *White*, the district court granted summary judgment in favor of the defendants based on the plaintiffs' failure to timely designate an expert witness. *See id.* ¶ 19. The district court had reasoned that expert testimony was necessary in that case because it concerned "complex real estate investments that involved multiple parties and types of properties, and various financing arrangements spanning a period of several years." *Id.* ¶ 21.

¶12    On appeal, this court agreed that "where the average person has little understanding of the duties owed by particular trades or professions, expert testimony must ordinarily be presented to establish the standard of care," and we recognized that courts have often required expert testimony in cases dealing with certain professions, such as insurance brokers and investment trading advisors. *Id.* ¶ 20 (quotation simplified). We further agreed that the *White* case "involve[d] some issues that [went] beyond the common knowledge and understanding of a layperson." *Id.* ¶ 21. Nonetheless, we reversed the district court's grant of summary judgment because "the district court's broad brush approach did not adequately assess the need for an expert on each claim, or, more precisely, on each element of [the plaintiffs'] claims." *Id.* We recognized that there was at least one claim asserted—that the investment advisors "lied about having invested in the [product] and having received 'big checks' from the investment"—that was "a clear example of where expert testimony is not needed." *Id.* ¶ 23. This was so because "the gravity of investment advisors misrepresenting their participation in an investment and the consequence of lying about, or even exaggerating, the return they have received on their investment is certainly within the common knowledge and experience of the lay[person]." *Id.* (quotation simplified). We therefore remanded the case to the district court with instructions "to analyze the need for expert testimony on each of [the plaintiffs'] claims." *Id.*

¶13    Here, each side argues that *White* supports its position. The Live Abundant Parties argue that *White* clearly provides "that expert testimony is required to establish the standard of care for complex real estate investments and for breaches of duty by financial or insurance professionals, where, as here, the putative breaches go beyond lying to clients." Investors, on the other hand, argue that their claims are similar to the one highlighted in *White* where the jury was "adequately equipped to evaluate [the] evidence . . . without expert testimony." Thus, the question before

us focuses on exactly what kinds of failings were alleged by Investors in their claims against the Live Abundant Parties, that is, whether the alleged failings of the Live Abundant Parties could be described as lying about certain material information or whether their alleged failings are based on a lack of due diligence, whatever that entails. We agree with the Live Abundant Parties that Investors' claims fall into the latter category.

¶14    Investors assert a plethora of failings on the part of the Live Abundant Parties, but establishing negligence based on such failings requires an understanding of what steps the Live Abundant Parties reasonably should have taken before encouraging investment in the Woodbridge Product. For example, Investors assert that the Live Abundant Parties "never looked at an appraisal of the Woodbridge Property," "did not seek or look at any title reports," "did not know the actual potential return on Woodbridge investments," "failed to vet" the Woodbridge Product, and did not have "any insurance or financial accreditation." Whether such failings were negligent simply cannot be assessed without an understanding of what kind of due diligence was required under the circumstances. Although the average person understands that material lies or exaggerations are a breach of duty, the average person has little understanding of what level of investigation or depth of vetting is required before recommending the purchase of a real-estate investment product.

¶15    Investors also assert that the Live Abundant Parties made certain representations that qualify as negligent misrepresentations—namely, that the Live Abundant Parties (1) assured Investors that the Woodbridge Product was "'safe' and 'secure,'" (2) exaggerated or omitted information regarding potential returns, and (3) misrepresented or exaggerated the accreditation of some of the Live Abundant Parties. But the gravity of such statements, even if they did amount to actual

misrepresentations,[4] is not clear without knowing more. Specifically, to assess these claims, the fact finder would need to know (1) what type of due diligence was required before it would have been reasonable to call these investments "safe," (2) what

---

4. The one affirmative lie that Investors specifically assert in their briefing is that the Live Abundant Parties "advertised that they had 'obtain[ed] a title policy for each [Woodbridge] property' when, in reality, they never reviewed these policies and never conducted a title search." However, the record citation given to support this assertion is the following exchange during the testimony of a Live Abundant employee (who was not a party to this case):

Q. Did you ever review a title policy for any of these properties?

A. I don't—I don't believe so.

Q. Did you ever request that a title search be performed on any of the properties that were part of the Woodbridge notes your clients invested in?

A. Not that I recall.

Q. Do you have any knowledge of anyone at Live Abundant doing that?

A. I believe—I remember someone doing that, but I can't recall the specifics. But I—I believe that did happen with someone.

Q. You believe it happened, but do you know that it happened?

A. I can't recall the specifics, no.

Q. Okay. Do you—did you ever request an independent appraisal of any of these properties?

A. I personally did not, no.

This exchange does little to support Investors' assertion that the Live Abundant Parties did not review the title polices or conduct title searches as represented.

constitutes an appropriate assessment of potential future returns (which are never guaranteed and must involve at least some level of uncertainty and estimation), and (3) whether accreditation even mattered here in the sale of unregulated investment products. In other words, the fact finder needed to be able to assess whether the Live Abundant Parties were dishonest in some way that would have amounted to a violation of the duty "to exercise reasonable care or competence in determining the information to be supplied to others for guidance in business transactions." *Rawson v. Conover*, 2001 UT 24, ¶ 31, 20 P.3d 876; *see also White*, 2014 UT App 90, ¶ 23 (determining that expert testimony was not required where "the gravity of" the misrepresentations and "the consequence of" the misrepresentations were "within the common knowledge and experience of the lay[person]" (quotation simplified)); *Reperex Inc. v. Child, Van Wagoner & Bradshaw*, 2017 UT App 25, ¶ 49, 392 P.3d 905 (determining that the claims brought against a business broker were "not so complex as to require expert testimony" when those claims asserted that the broker lied about things that would clearly impact the value of the business being sold, including misrepresentations that the business's profits were several times what they actually were, significant misrepresentations about the time required to secure the appropriate business licenses, and a failure to disclose that the business's largest client had filed bankruptcy), *aff'd in part, rev'd in part sub nom., Reperex, Inc. v. Coldwell Banker Com.*, 2018 UT 51, 428 P.3d 1082.

¶16 Without expert testimony on what reasonable due diligence was required, Investors did not prove that the Live Abundant Parties failed to reasonably investigate the Woodbridge Product before recommending Investors invest or that the Live Abundant Parties affirmatively lied about something of sufficient gravity that it clearly amounted to negligence under any standard of care. Expert testimony was necessary to establish the standard of care the Live Abundant Parties owed to Investors

to investigate and vet the product recommended. And the trial court's determination to the contrary was in error.

CONCLUSION

¶17    Because expert testimony was required for Investors to prevail on their claims and because no such testimony was presented to the jury, the trial court erred in denying the Live Abundant Parties' motions for judgment as a matter of law. We therefore reverse those determinations, vacate the verdict, and direct the entry of judgment in favor of the Live Abundant Parties.

———————